736 So.2d 144 (1999)
William BOWMAN, Jr., et al., Appellants/Cross-Appellees,
v.
Daniel L. SALTSMAN, Jr., et al., Appellees/Cross-Appellants.
No. 98-2197.
District Court of Appeal of Florida, Fifth District.
July 2, 1999.
*145 Hala A. Sandridge and Charles Tyler Cone, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellants/Cross-Appellees.
Darryl W. Johnston of Johnston & Sasser, P.A., Brooksville, for Appellees/Cross-Appellants.
HARRIS, J.
Bowman desired an easement across property belonging to Saltsman. Saltsman would not convey an easement but agreed to sell the entire parcel to Bowman if the deal could be arranged as a tax free exchange. Therefore, the parties entered into an agreement under which Bowman would pay $425,000 for the desired property but instead of paying it directly to Saltsman he would deliver the money to a trustee who would purchase property desired by Saltsman and, when all the money had been paid and the exchange property had been acquired, Bowman would get legal title[1] to the land he sought and Saltsman would end up with the property he desired with no tax consequence.
This arrangement is a classic, if somewhat complicated by the tax consideration, agreement for deed and, under section 697.01, Florida Statutes, is a mortgage and carries all the burdens thereof including the rules relating to foreclosure and the right of redemption. See Vandenberg v. Wells, 721 So.2d 453 (Fla. 5th DCA 1998).
Bowman made over $300,000 in payments before he was considered "in breach."[2] Instead of declaring a default and foreclosing the mortgage, Saltsman claimed ownership of both parcels and filed an action to reform certain deeds given over the years pursuant to the agreement. Bowman counterclaimed for, among other remedies, specific performance of the land sale contract.
The trial court determined that Bowman's exclusive remedies contained in the agreement, should Saltsman default, were either specific performance or a return of those monies he had paid to the trustee which had not been applied to the exchange *146 property, and a perpetual easement. Finding, however, that Bowman defaulted by not making all the payments when due, the court denied him any relief but granted Saltsman's request to reform the deeds previously given. In effect, although Bowman had paid over 70% of the purchase price of the property covered by the agreement, he was denied his right of redemption because foreclosure was not required.
The legislature has established as the policy of this state that an instrument given to secure the payment of money, and that was the purpose of the seller's retaining legal title until final payment (the acquisition and exchange of the second parcel) was made, requires that upon default there be a foreclosure of the buyer's interest and that the seller cannot merely retain title after a default in payment occurs. Thus the remedies contained in the agreement are irrelevant.
Here, Bowman sought to enforce the agreement which required that he be permitted to pay the remaining sum due and to acquire the legal title because otherwise an unconscionable forfeiture of all of the payments which he made would occur. While that is true in this case, the amount of money paid is not determinative. Since the buyer's equitable interest in the land had not been foreclosed at the time he sought to resume payments under the agreement, even though he had defaulted in his payments, the court erred in not enforcing his rights under the agreement. After default, the secured party may either waive the default or declare a default and foreclose. What he cannot do is to treat the default as an automatic termination of the buyer's interest.
We remand to the trial court to determine the amount still owing under the agreement together with damages, if any, caused to Saltsman because of Bowman's breach and, upon the payment of said sum by Bowman, to order Saltsman to convey the property as agreed.
Since this will remedy the problem of the earlier challenged deeds, we reverse the court's order reforming them.
REVERSED and REMANDED.
COBB and THOMPSON, JJ., concur.
NOTES
[1] Under a land contract sale arrangement, the buyer immediately receives and holds the equitable title and the seller holds the bare legal title only as security for the unpaid purchase price. White v. Brousseau, 566 So.2d 832 (Fla. 5th DCA 1990).
[2] Even though the agreement contemplated that the exchange would be completed within a year, it provided for extensions upon the payment of option monies. Bowman has paid about $100,000 for such extensions.