[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-12181

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 88-00640-CV-DLG
D.C. Docket No. 92-01264-CV-DLG

HERBERT H. DAVIS,

Plaintiff-Appellee,

versus

NATIONAL MEDICAL ENTERPRISES, INC.,

Defendant-Appellant.

_____
_

NATIONAL MEDICAL ENTERPRISES, INC.,
a foreign corporation authorized to do business
in the State of Florida,

Plaintiff-Appellant,

versus

SUSAN DAVIS, BESSEMER TRUST, personal
representatives of the estate of the "Herbert Davis Marital
Trust 'B' Under Agreement Dated January 10, 1991",

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(June 15, 2001)

Before EDMONDSON, FAY and GARWOOD*, Circuit Judges.

FAY, Circuit Judge:

This appeal involves competing post-trial motions for attorneys' fees. The district court ruled that Appellees Susan Davis and Bessemer Trust ("Davis") were entitled to attorneys' fees and costs as the prevailing party under the net judgment rule, and awarded the full amount of fees requested without an evidentiary hearing. The district court denied the request by National Medical Enterprises ("NME") for attorneys' fees. Because we find the claims of the parties separate, and find that both Davis and NME have a legal basis for the award of attorneys' fees, we vacate the findings of the district court and remand for further proceedings to determine the correct amounts due to each party.

_____

_

*Honorable Will. L. Garwood, U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

I  Factual and Procedural History

We summarize the long and convoluted history of this case to help focus the issues on appeal. In March 1984, NME purchased eighty percent (80%) of Av-Med, Inc., a closely-held health maintenance organization, from Herbert Davis and others. Pursuant to the Stock Purchase Agreement, Davis made various representations and warranties and agreed to indemnify NME for all claims arising from the breach thereof, including any claims related to Av-Med's stock. The Stock Purchase Agreement contained an attorneys' fee clause.

Contemporaneous with the execution of the Stock Purchase Agreement, Davis and National Medical Management, Inc. ("NMMI"), a subsidiary of NME, entered into an employment agreement for Davis' continued employment with Av-Med. The parties agree that this employment contract was subsequently superceded by two separate documents.[1] As a result of these agreements (collectively "Employment Contract"), the district court concluded that a valid and

---

[1] Anticipating the sale of Av-Med to a third party, Davis and NME entered into a Settlement Agreement on June 27, 1986, by which NME concedes that it guaranteed payment of Davis' salary under the Employment Contract. Later, the parties executed an Amendment to Settlement Agreement dated September 8, 1986. That agreement obligated NME to pay Davis on January 2, 1988, all amounts accruing under the Employment Contract after the closing of the sale of Av-Med.

binding agreement existed between the parties, pursuant to which NME was bound to employ Davis at specified compensation through a given date.

On or about November 17, 1986, Davis and Av-Med were sued for securities fraud in connection with the purchase of Av-Med shares from a minority shareholder. NME defended the case on behalf of Av-Med and sought indemnification from Davis under the Stock Purchase Agreement. Davis did not respond to the notice for indemnification, and NME eventually settled the claims against Av-Med for $350,000.[2] When Davis refused NME's demand for indemnity in the amount of $463,000, including $113,000 in attorneys' fees, NME discontinued paying Davis under his Employment Contract.

On January 15, 1988, Davis sued for breach of the Employment Contract. NME removed the case to the District Court for the Southern District of Florida, based on diversity jurisdiction, and counterclaimed for indemnification based on the indemnification clause in the Stock Purchase Agreement.

At trial, the matters pertaining to NME's liability on the Employment Contract were deemed conclusively admitted and required no proof. After a two day trial, the district court ruled in favor of NME on its claim for indemnification. On March 19, 1991, the district court entered a final judgment awarding Davis

---

[2]Thereafter, Davis settled the securities fraud action for $1,125,000.

$1,006,159.46 on his breach of contract claim, and awarding NME $645,452 on its indemnification claim.

Both Davis and NME filed motions for attorneys' fees. NME based its claim for fees on the attorneys' fees clause in the Stock Purchase Agreement, while Davis sought fees based on § 448.08 of the Florida Statutes providing for attorneys' fees and costs in actions for unpaid wages. NME filed objections to the affidavit of counsel, attached to Davis' motion for attorneys' fees, on the grounds that it failed to establish the number of hours or the nature of the work performed.

Before the attorneys' fees were decided, Davis appealed the district court's ruling in favor of NME on the indemnification claim. This Court affirmed the judgment, Davis v. Nat'l Medical Enterprises, 963 F.2d 385 (11th Cir. 1992), and on September 4, 1992, granted NME's motion for its appellate attorneys' fees and remanded to the district court to conduct an evidentiary hearing on the amount to be awarded. Accordingly, NME filed a motion for an evidentiary hearing on attorneys' fees in the district court.

While this Court's order, NME's motion for an evidentiary hearing, and the cross-motions for attorneys' fees were pending in the district court, Davis died. Pursuant to Florida Probate Code, NME instituted a new action, District Court Case No. 92-1264, against Davis' estate for fees. The two cases were consolidated.

5

On September 30, 1998, the district court entered an Order on Entitlement to Attorneys' Fees and Costs ("Order on Entitlement") determining that Davis was entitled to attorneys' fees and NME was not. Applying Prosperi v. Code, Inc., 626 So.2d 1360 (Fla.1993), the district court determined that Davis was the winner of the net judgment in the primary lawsuit. The district court also reasoned that the amount of trial time spent on a particular issue did not, per se, establish which party prevailed on the most significant issues in the case. Finally, the district court found that the claim and counterclaim were "not inseparable," and that the equities favored neither NME nor Davis because both parties had breached their respective obligations.[3]

The September 30, 1998, Order on Entitlement directed the parties to confer and resolve between themselves the dollar amount of fees that should be awarded, and to file a report with the court within 35 days. Despite two extensions of time, the parties were unable to agree before the court's final deadline of November 17, 1999. On November 19, 1999, Davis filed a unilateral report advising the court that the parties could not agree on a fee award, and reiterating his request for $115,761.25 in fees and costs. NME filed its unilateral report on December 16,

_____

[3]Senior Judge James W. Kehoe entered the Order on Entitlement but soon thereafter died. NME's Motion for Reconsideration was denied by Judge Graham, to whom the case was reassigned, on July 9, 1999. On June 23, 2000, this Court dismissed NME's appeal from the September 30, 1998, and July 9, 1999, orders for lack of jurisdiction.

6

1999, advising the court that an evidentiary hearing was necessary because Davis could not produce adequate time records.

Before NME filed its report, Magistrate Judge William C. Turnoff issued a Report and Recommendation, dated December 15, 1999, that the Davis attorneys be awarded the full amount of fees requested. The Magistrate Judge found that NME had failed to challenge the reasonableness of the fees sought, and alternatively, that the amount of time expended and the hourly rates sought were reasonable. NME filed three sets of Objections to the Report and Recommendation, two of which were referred to and denied by the Magistrate Judge. The Magistrate Judge explained that NME's untimely unilateral report merely requested an evidentiary hearing without challenging the time expended by Davis' counsel as unreasonable.[4] The third time NME filed Objections, the district court, Judge Graham presiding, adopted the Report and Recommendation of the Magistrate Judge awarding Davis $112,761.25 in attorneys' fees and $3,479.84 in costs.[5] This appeal followed.

_____

[4]The Magistrate Judge also explained that NME's failure to timely serve a unilateral report due to "an intervening holiday, an out-of-town business trip, and preparation for a trial" did not demonstrate the grounds necessary to grant NME's Motion for Reconsideration.

[5]The district court awarded Davis (1) 467.9 hours of attorney work at an hourly rate of $145.82 and 165 hours of paralegal work at an hourly rate of $60 per hour from the inception of the case until judgment in March 1991; (2) 202.25 hours of attorney work at an average hourly rate of $160.02 and 24.9 hours of paralegal work at an hourly rate of $90 from September 1, 1992 to March 2000.

First, NME claims error with the district court's failure to conduct an evidentiary hearing to determine the amount of appellate fees to which it is entitled pursuant to this Court's order in the first appeal. Second, NME appeals the district court's Order of September 30, 1998, finding that Davis was entitled to attorneys' fees, but that NME was not. Third, NME appeals the amount of fees awarded Davis, by Order dated March 21, 2000, arguing that Davis' attorneys did not produce adequate time records and did not make any attempt to exclude time spent on claims which failed.

II      Standard of Review

We review the decision to grant or deny attorneys' fees for an abuse of discretion. See United States v. Gilbert, 198 F.3d 1293, 1298 (11th Cir. 1999). While we generally accord deference in diversity cases to a district court's interpretation of the law of the state in which it sits, we review de novo a district court's determination of state law. Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991) (quoting Salve Regina College v. Russell, 499 U.S. 225, 111 S.Ct. 1217, 1221 (1991).[6]

III     Discussion

_____

[6]As a federal court sitting in diversity, we apply the substantive law of the forum state. Insurance Co. of N. America v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991). In applying state law, we adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise. Id. at 571.

A.     Entitlement to Appellate Fees

As an initial matter, NME is correct that it is entitled to recover its attorneys'

fees incurred in the first appeal.  Per this Court's Order of September 4, 1992, the

district court should have conducted an evidentiary hearing to determine the

amount of appellate fees to which NME is entitled.

B.     Entitlement to Trial Fees

NME contends that the district court erred in applying Prosperi because

NME prevailed on its indemnification claim and was contractually entitled to an

award of fees under the Stock Purchase Agreement regardless of whether Davis

won his claim asserted under the Employment Contract.  NME argues that the

district court should not have reached the issue of which party was the net winner

or won the most significant issue because each party brought suit on a separate

cause of action and thus, each party's fee claim rises or falls on its own.  Davis

contends that the district court correctly awarded Davis attorneys' fees as the

winner of the net judgment.

1.     NME's Entitlement to Attorneys' Fees

We agree with NME that Prosperi is not controlling.  Prosperi involved a

claim for mechanic's lien and a claim for breach of contract, both arising out of the

same transaction, only one of which called for the payment of attorneys' fees to the

9

prevailing party. See Prosperi, 626 So.2d at 1361. The trial court denied the claim for mechanic's lien and held that the contractor had breached the contract, but awarded the contractor a net judgment for amounts owing under the contract. See id. As a consequence of the net judgment in favor of the contractor, the trial court denied the owner's claim for attorneys' fees pursuant to the prevailing party fee provision in the mechanic's lien statute, section 713.29 of the Florida Statutes. See id. at 1361-62. The Florida Supreme Court reversed and held that the owner was entitled to attorneys' fees because it had prevailed on the significant issues in the case. See id. at 1363.[7]

Davis is correct that Prosperi has not been limited to mechanic's lien cases, and has been followed by courts in numerous different contexts.[8] As a general rule, Prosperi stands for the proposition that, in awarding attorneys' fees, a trial court has discretion to consider the equities and to determine which party prevailed on the significant issues when neither party has been vindicated fully. Implicit in this principle is that only one party is entitled to attorneys' fees pursuant to a prevailing party fee provision when litigation involves alternative theories of

---

[7]Thus, although Prosperi did not abolish the net judgment rule, the Florida Supreme Court expressly disapproved strict application of the rule. See Prosperi, 626 So.2d at 1363.

[8]See, e.g., Mulato v. Mulato, 734 So.2d 477, 478 (Fla. 4th DCA 1999) (civil theft action); Lewis Oil Co., Inc. v. Milliken, 711 So.2d 636, 637 (Fla.1st DCA 1998) (breach of contract dispute); Pizza U.S.A. of Pompano, Inc. v. R/S Associates of Florida, 665 So.2d 237, 241 (Fla. 4th DCA 1995) (landlord/tenant dispute).

10

liability for the same wrong. Cf. Reinhart v. Miller, 548 So.2d 1176 (Fla. 4th DCA 1989) (stating that there could not be two prevailing parties if there could not be two breaches).

Where, however, each claim is separate and distinct and would support an independent action, as opposed to being an alternative theory of liability for the same wrong, the prevailing party on each distinct claim is entitled to an award of attorneys' fees for those fees generated in connection with that claim. Folta v. Bolton, 493 So.2d 440, 442-43 (Fla. 1986) (reasoning that each claim involved different acts or conduct occurring at different times, by different persons, resulting in different injuries). This distinction accords with the guidelines set forth by the United States Supreme Court. See Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940 (1983) (in determining reasonable hours for award of attorneys' fees, the district court must deduct time spent on discrete and unsuccessful claims).

Where claims are separate and divisible, each should be given separate consideration for the purpose of awarding attorneys' fees. For example, in Welleby Condo. Assoc. One, Inc. v. Brown, 561 So.2d 7 (Fla. 4th DCA 1990), the defendant prevailed in an action to recover condominium assessments and the plaintiff prevailed on the counterclaim for damages for the loss of parking spaces at the condominium. See Welleby, 561 So.2d at 7. The Fourth District Court of

11

Appeal held that each party was entitled to attorneys' fees for the claim on which it prevailed because the claim and counterclaim were separate and distinct. See id.

In this case, the claim and counterclaim were unrelated, involving wholly separate contracts and resulting in separate breaches. See Consolidated Southern Sec., Inc. v. Geniac & Associates, Inc., 619 So.2d 1027, 1028 (Fla. 2nd DCA 1993) (citation omitted) (reasoning that claims were separate and distinct for purposes of attorneys' fee award because they involved essentially different contracts). Although the Employment Contract and the Stock Purchase Agreement were entered into contemporaneously, the former governed the employment relationship between Davis and NMMI while the latter comprised numerous agreements related to the complex stock buy-out of Av-Med by NME. Either could have been executed separately and neither was dependent upon the other.

Davis contends that the claim and counterclaim were inseparable based on NME's admission that it refused to pay Davis under the Employment Contract because Davis failed to indemnify NME under the Stock Purchase Agreement. However, we find no evidence in the record that the contracts were incorporated by reference or that performance pursuant to each was in any way connected. If they were inseparable, the breach by one party would have released the other party from future performance. Instead, the district court judge expressly concluded that

12

NME had breached the Employment Contract, and that Davis had breached the indemnification provision of the Stock Purchase Agreement.[9]

NME has a contractual right to attorneys' fees as the prevailing party on the indemnification claim. When the parties to a contract determine that the prevailing party in any litigation shall be entitled to attorneys' fees, it is the court's duty to enforce the attorneys' fee provision in the parties' contract. See Pelican Bay Homeowners Ass'n Inc. v. Sedita, 724 So.2d 684, 685 (Fla. 5th DCA 1999). Since we find that the claim and counterclaim were separate and distinct, NME is entitled to attorneys' fees incurred in connection with its claim for indemnification.

2.    Davis' Entitlement to Attorneys' Fees

We must now determine whether Davis is entitled to attorneys' fees as the prevailing party on his claim for breach of contract. NME claims that there is no contractual or statutory basis for the award. See Dade County v. Pena, 664 So.2d 959, 960 (Fla. 1995) (holding that attorneys' fees may not be awarded absent a statutory or contractual provision for such fees). It is undisputed that the Employment Contract does not contain a prevailing party fee provision. Therefore, Davis relies exclusively on Florida Statute § 448.08 which provides a trial court

---

[9]Indeed we are a little confounded by the district court's order awarding fees to Davis and not to NME after finding that the claims were "not inseparable," in other words separable. We assume this is a typographical error.

13

with the discretion to award attorneys' fees to the prevailing party in an action for unpaid wages. See Fla. Stat. § 448.08 (1997).[10]

The question is whether it is reasonable to interpret Davis' claim against NME as an action for unpaid wages within the purview of the statute. See, e.g., Speer v. Mason, 769 So.2d 1102, 1103 (Fla. 4th DCA 2000). This is a mixed question of law and fact. See id.

The district court must have relied on F.S. § 448.08 in awarding Davis fees because that is the sole basis on which Davis sought attorneys' fees. Furthermore, in its Findings of Fact and Conclusions of Law, the district court found that NME "agreed to employ Davis at specified compensation, through a given date" and that "NME breached that agreement through its failure to make the agreed compensation payments to Davis on the dates due."

However, in objecting to these fees, NME misplaces reliance on Joseph v. Commonwealth Land Title Ins. Co., 707 So.2d 376 (Fla. 5th DCA 1998). In Joseph, the employee alleged that the employer breached an employment contract by terminating him. See id. at 377. The court denied the claim for attorneys' fees pursuant to F.S. 448.08 because the suit involved unaccrued wages, wages that

---

[10]Section 448.08 of the Florida Statutes provides:
> The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee.

Fla. Stat. § 448.08 (1997).

14

would have been due had the employment not been terminated.  See id.  Here, Davis alleged that NME breached the Employment Contract by failing to pay him monies that were due and owing.  The district court agreed and found that NME had failed to pay Davis "on the dates due," i.e., that the payments had accrued.

The only remaining question is whether the payments constitute wages.  The money owed Davis stems from a straight employment contract.  If that were the only agreement between the parties, the payments would clearly be wages.  However, the parties altered the employment contract because NME decided that it would be easier to resell Av-Med, a perfectly reasonable business decision.  That does not change the fact that the monies owed Davis derive from the employment relationship and thus, we conclude would be considered "wages" under F.S. 448.08.[11]  Accordingly, we affirm the district court's order awarding Davis attorneys' fees, but only those fees incurred in connection with the breach of contract claim.

C.    Amount of Fees Awarded

Given our decision above, we do not address NME's argument that the Magistrate erred in the amount of fees awarded Davis because Davis failed to

---

[11]We recognize that we are making an "Erie" guess.  Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

15

produce sufficient evidence to establish the number of hours expended or a reasonably hourly rate.[12]  On remand, the district court will have to recompute the amount of attorneys' fees to which each party is entitled.

IV     Conclusion

For the reasons set forth above, we AFFIRM that portion of the district court's Order of September 30, 1998, awarding Davis attorneys' fees, and REVERSE that portion of the Order denying attorneys' fees to NME.  We VACATE the Order of March 21, 2000, and REMAND to the district court for an evidentiary hearing to determine the amount of trial fees to which each party is entitled on the claim on which it prevailed.  On remand, the district court should also conduct an evidentiary hearing to determine the amount of appellate fees to which NME is entitled.

---

[12]Our review of Davis' fee request reveals a substantial lack of documentation.  For example, a significant portion of the entries stated only, "For General Representation."  However, a district court is itself an expert on the question of fees, and may consider its own knowledge and experience in making a fee award.  Norman v. Hous. Auth.of the City of Montgomery, 836 F.2d 1292, 1304 (11th Cir.1988).