[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 17, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15142
Non-Argument Calendar

_____

D. C. Docket No. 06-00290-CV-J-33JRK

OHIO NATIONAL LIFE ASSURANCE CORPORATION,

                                        Plaintiff-Counter  Defendant,

versus

CHRISTOPHER LANGKAU,
as Personal Representative of
the Estate of Ralph L. Langkau,

                                        Defendant-Cross Claimant-
                                        Appellee,

ERIK T. CLAY,

                                        Defendant-Counter-
                                        Claimant-Cross
                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 17, 2009)

Before DUBINA, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Erik Clay, proceeding *pro se*, appeals the district court's orders finding Christopher Langkau ("Langkau" or "PR of the Estate"), as personal representative of the estate of Ralph Langkau, entitled to the proceeds of decedent Ralph Langkau's life insurance policy and denying Clay's subsequent motion for reconsideration.

This appeal arises out of an action in interpleader. Pursuant to a land transaction, in which Clay purported to transfer property to Ralph Langkau, Ralph Langkau obtained a life insurance policy from Ohio National Life Assurance Corporation ("ONLAC") in the amount of $100,000. On January 26, 2004, Clay executed a "Mortgage Deed" purporting to convey property subject to a mortgage to Ralph Langkau, who, in turn, executed a "Mortgage Note," promising to pay Clay $120,000 for the property. While the Mortgage Deed is ambiguous, the parties agree that Ralph Langkau attempted to buy the subject property from Clay. On the same day, Ralph Langkau executed an amendment to the insurance policy naming himself as the owner, Clay as the primary beneficiary, and the estate of Ralph Langkau as the contingent beneficiary of the policy. Ralph Langkau also collaterally assigned the policy to Clay by executing an "Assignment." There is

2

no dispute that the insurance policy was intended as security for the Mortgage Note.

After the death of Ralph Langkau, Clay and Langkau in his individual capacity, filed with ONLAC death claim forms for death benefits on Ralph Langkau's life. Accordingly, ONLAC filed an interpleader complaint in the district court, in which it sought permission to pay the proceeds of the policy into the court registry and to require the defendants to interplead and settle between themselves their rights to the insurance proceeds. The district court granted interpleader and dismissed ONLAC from the suit. Subsequently, Langkau moved to substitute himself in his capacity as personal representative of Ralph Langkau's estate as the real party in interest. The district court granted the motion.

During the litigation, the district court imposed sanctions against Clay for failure to appear at a first pretrial hearing. After reviewing Clay's response to its order to show cause as to why sanctions should not be imposed against him, the district court found that Clay's noncompliance was unjustified and ordered Clay, pursuant to Fed.R.Civ.P. 16(f)(2), to pay the reasonable expenses and attorney's fees Langkau had incurred in preparing for and attending the pretrial hearing.

During a second pretrial hearing, the district court ascertained the relevant law, and the parties agreed that, under Florida law, a life insurance beneficiary

must have an insurable interest in the life of the insured at the time the beneficiary is named. Clay argued that he had an insurable interest in Ralph Langkau's life by virtue of his relationship of natural affection with Ralph Langkau and a pecuniary interest, which arose from the enforceable Mortgage Deed and attached Mortgage Note.

During the bench trial, Clay testified that after Ralph Langkau had failed to make a single payment on the Mortgage Note, the two men "decided to dissolve the mortgage deed and note, to let go of each other's interests, and cancel the mortgage deed and note forever." There is no dispute that, after ONLAC filed the interpleader complaint, Clay reclaimed the property and gifted it to his aunt. Noting that Clay had "disregarded the [M]ortgage [D]eed," reclaimed the land, and gifted it to his aunt, Langkau argued that the estate was entitled to the insurance proceeds or the subject property, as it would be inequitable for Clay to retain both the insurance proceeds and the property.

On August 13, 2008, the district court resolved the merits of the parties' claims to the interpleaded insurance proceeds in favor of the contingent beneficiary, Langkau, as the representative of Ralph Langkau's estate. Adhering to the parties' legal stipulation, the court first concluded that Clay did not have a relationship of natural affection sufficient to give rise to an insurable interest.

4

With respect to Clay's pecuniary interest, the district court rejected Clay's claim of entitlement to the insurance proceeds on the ground that he had no insurable interest in Ralph Langkau's life. The court reasoned that the land transaction was insufficient to give rise to an insurable interest in Ralph Langkau's life because the Mortgage Note was unsupported by consideration, and Clay never transferred title or the land to Ralph Langkau. The court further found that the Mortgage Deed did not contain a promise to transfer the land to Ralph Langkau. A disbursement voucher from the clerk of court in the amount of $119,534.12 was issued to Langkau as PR of the Estate on August 14, 2008.

Clay filed a motion for reconsideration, which the court rejected, noting that both parties had stipulated that a life insurance beneficiary must have an insurable interest in the life of the insured.

On appeal, Clay raises numerous issues, which generally encompass (1) the district court's disbursement of the insurance proceeds; (2) commencement and maintenance of the interpleader action; (3) imposition of sanctions against Clay for failure to appear at the preliminary hearing; (4) merits of the district court's order awarding the insurance proceeds to Langkau, as PR of the Estate; (5) alleged errors committed during the first pretrial hearing and the bench trial by the district court and counsel for Langkau; (6) Clay's entitlement to costs, expenses, and

5

damages; and (7) the denial of his motion for reconsideration.

As an initial matter, we review *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). However, courts will not act as *de facto* counsel for *pro se* parties or rewrite a deficient pleading. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). "[I]ssues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir.), *cert. denied*, 129 S. Ct. 74 (2008). A party does not sufficiently raise an issue on appeal when he mentions the issue in his brief without providing specific argument in support of the issue. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (counseled); *see also Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (holding that an argument raised for first time in *pro se* litigant's reply brief was not properly before this Court); *but see Lorisme v. I.N.S.*, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997) (determining that a *pro se* petitioner, who spoke Creole and was illiterate, did not abandon his petition for review by adopting a member of the Board of Immigration Appeals' dissent as his argument).

Further, issues not raised before the district court generally will not be considered. *See S.E.C. v. Diversified Corporate Consulting Group*, 378 F.3d

1219, 1227 (11th Cir. 2004); *see* Fed.R.Civ.P. 46 ("When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection."). However, "[f]ailing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made." Fed.R.Civ.P. 46.

In this case, because jurisdiction is premised on diversity, the procedural aspects of the case are controlled by federal law, and the substantive aspects of the case are controlled by Florida law. *Hammer v. Slater*, 20 F.3d 1137, 1140 (11th Cir. 1994) (applying Georgia law).

## I.

Clay argues for the first time in his reply brief that the district court abused its discretion in disbursing the insurance proceeds before the time within which to file a motion for reconsideration or notice of appeal had expired. Because the question of premature disbursement may render the instant appeal moot, we address it first.

Rule 62 of the Federal Rules of Civil Procedure imposes a ten-day automatic stay on the enforcement of judgments. Fed.R.Civ.P. 62(a). This rule provides an appellant with the opportunity to post a supersedeas bond to obtain a

stay pending appeal. Fed.R.Civ.P. 62(d) ("If an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . .").

An appellant's rights to property on deposit in the court registry are not abolished merely because the court has entered judgment and disbursed the property. *See Baltimore & O.R. Co. v. United States*, 279 U.S. 781, 786, 49 S. Ct. 492, 493, 73 L. Ed. 954 (1929) (recognizing the "well established" principle that one has a "right to recover what one has lost by the enforcement of a judgment subsequently reversed").

We conclude from the record that this appeal is not rendered moot by the district court's disbursement of the proceeds because Clay can recover the proceeds if the court determines on remand that he is the proper recipient of the insurance proceeds.

## II.

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). Interpleader action proceeds in two stages. *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). At the first stage, the court determines whether

8

interpleader is proper and "whether to discharge the stakeholder from further liability to the claimants." *Id.* At the second stage, the court evaluates "the respective rights of the claimants to the interpleaded funds." *Id.*

Interpleader is appropriate where the stakeholder may be subject to adverse claims that could expose it to multiple liability on the same fund. Fed.R.Civ.P. 22(a)(1). "In an interpleader action, the burden is on the party seeking interpleader to demonstrate that he is entitled to it," or more specifically, "that he has been or may be subjected to adverse claims." *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974). When the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested. *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641-42 (6th Cir. 2007) (internal quotation marks omitted).

Historically, in order to bring an interpleader action, a plaintiff threatened with multiple liability on a single fund was required to show that he had incurred no independent liability to any claimant, such that he was indifferent as between the claimants. *Hayward & Clark v. McDonald*, 192 F. 890, 892-93 (5th Cir. 1912). The law of this circuit has not maintained the independent liability restriction on interpleader explicitly. *See Odum v. Penn Mut. Life Ins. Co.*, 288 F.2d 744, 747-48 (5th Cir. 1961) (assuming, *arguendo*, the applicability of the

independent liability restriction and stating that the effect of an absolute

assignment on the designation of policy beneficiary "as a matter of contract law

will properly be resolved in the part of the interpleading proceeding in which the

claimants themselves vie for the fund in the possession of the court").

## A.    *Subject Matter Jurisdiction*

Clay argues that the district court lacked subject matter jurisdiction over the

interpleader action and that ONLAC failed to satisfy the elements necessary to

demonstrate its right to the interpleader action and should not have been dismissed

from the action.  To this end, he argues that (1) diversity did not exist between the

parties; (2) ONLAC was neither disinterested nor a mere stakeholder; and

(3) ONLAC failed to show the non-existence of an independent liability to one of

the claimants.

We review *de novo* questions of subject matter jurisdiction, including

standing.  *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  In federal

courts, there are two interpleader remedies: "statutory interpleader under [28

U.S.C. §] 1335 and traditional equitable interpleader governed by Rule 22 [of the

Federal Rules of Civil Procedure]."  *Lummis v. White*, 629 F.2d 397, 400 (5th Cir.

1980), *rev'd on other grounds by Cory v. White*, 457 U.S. 85, 102 S. Ct. 2325, 72

L. Ed. 2d 694 (1982).  The difference is that § 1335 interpleader has more liberal

10

procedural rules. *Id.* Relevant to this appeal, Rule 22 requires complete diversity between the stakeholder and the claimants. *Id.* at 400-01. In contrast, § 1335 requires minimal diversity among the claimants, that is, at least one claimant must be of diverse citizenship from another claimant. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S. Ct. 1199, 1203, 18 L. Ed. 2d 270 (1967). Subject matter jurisdiction premised on diversity of citizenship also requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a).

Because Clay and Langkau, both Florida claimants, were diverse from ONLAC, an Ohio corporation, and the amount in controversy exceeded $75,000, we conclude that the district court had jurisdiction under Rule 22 and 28 U.S.C. § 1332(a)(1) over the interpleader action. Moreover, we conclude that the district court properly dismissed ONLAC from the interpleader action because ONLAC (1) was disinterested because it had no interest in the outcome of the dispute between the claimants, and (2) had no independent liability to either of the claimants, because it had no obligation apart from payment of the deposited funds.

## B. *ONLAC's Breach of its Contractual Duties*

Clay argues that ONLAC breached its contractual duties to him by wrongfully withholding payment of the insurance proceeds, failing to defend his

11

claim to the proceeds, disclosing confidential information to Langkau, and furnishing death forms to other claimants.

Clay's arguments are without merit. First, because ONLAC never disputed its duty to pay the proceeds of the policy and has no obligation to defend the claims of adverse claimants in an interpleader action, it cannot have breached its duties by wrongfully withholding payment or failing to defend. Second, because Clay raised his arguments concerning the disclosure of confidential information and death forms for the first time in his reply brief, we decline to consider them.

### C. ONLAC's Failure to State a Claim

Clay argues that the interpleader complaint should have been dismissed because ONLAC failed to state a claim.

We review *de novo* questions concerning a district court's ruling on a motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to set forward in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed.

12

2d 929 (2007). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. at 1964-65 (internal quotation marks and alteration omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965. At the pleading stage, Rule 8(a)(2) requires that "the plain statement possess enough heft to show that the pleader is entitled to relief." *Id.* at 557, 127 S. Ct. at 1966 (internal quotation marks and alternation omitted). A complaint is viewed in the light most favorable to the plaintiff, and the court accepts as true all of the plaintiff's well-pleaded facts. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).

Because ONLAC's factual allegations in its interpleader complaint sufficed to provide the grounds for its entitlement to interpleader, we conclude that the district court properly declined to dismiss the interpleader complaint for failure to state a claim.

### D. ONLAC's Failure to Attach a Reservation-of-Rights Letter to its Complaint

Clay argues that the interpleader action was improper because ONLAC failed to attach a reservation-of-rights letter to its complaint.

13

Section 627.426(2)(a) of the Florida Statutes precludes a liability insurer from denying coverage based on a particular coverage defense, unless the liability insurer provides written notice of reservation of rights to assert a coverage defense to the named insured. This statute, by its terms, "applies only to a denial of coverage based on a particular coverage defense." *Almendral v. Sec. Nat'l Ins. Co.*, 704 So.2d 728, 730 (Fla. Dist. Ct. App. 1998) (internal quotation marks omitted).

Because ONLAC has not denied its obligation to pay the proceeds of the insurance policy, we conclude that the protections afforded by Fla. Stat. § 627.426(2)(a) are inapplicable to the instant case.

### E. ONLAC's Failure to Attach an Affidavit of No Collusion and to Seek an Expeditious Judicial Determination

Clay argues that the interpleader action was improper because ONLAC failed to attach an affidavit of no collusion to the complaint and to seek an expeditious judicial determination. Because we are persuaded that the interpleader action was commenced in compliance with the Federal Rules of Civil Procedure and Clay cites no federal authority in support of his arguments, he cannot show that the interpleader action was improper for these reasons.

### F. Langkau's Answer

Clay argues that he was entitled to the insurance proceeds because Langkau's answer to the interpleader complaint was deficient because it failed to state a claim and was untimely filed.

We conclude from the record that Clay was not entitled to insurance proceeds by virtue of any deficiency in Langkau's answer because the court's inquiry at the first stage of interpleader concerns the propriety of maintaining the interpleader action, not the respective rights of the claimants to the life insurance proceeds.

### G. Langkau's Capacity to Maintain the Interpleader Action as PR of the Estate

Clay argues that, because the estate of Ralph Langkau was not properly joined as an indispensible party or substituted, Langkau lacked standing and the interpleader action should have been dismissed. He further argues that his constitutional rights were violated because the court (1) granted Langkau's untimely motion for substitution and (2) failed to provide Clay notice and the right to be heard before granting the motion to substitute.

The Supreme Court has held that an interpleader action cannot proceed in the absence of a party who must be joined in accordance with the standard set forth in Rule 19 of the Federal Rules of Civil Procedure. *Republic of Philippines*

15

*v. Pimentel*, ___ U.S. ___, 128 S. Ct. 2180, 2193-94, 171 L. Ed. 2d 131 (2008). Rule 19(a)(1)(A) provides for the joinder of a person who is subject to service of process and whose joinder will not destroy subject matter jurisdiction if the person's presence is necessary to afford complete relief. Where such a person cannot be joined, a court must determine whether the action should proceed among the existing parties or should be dismissed. Fed.R.Civ.P. 19(b). The Federal Rules of Civil Procedure further provide that "[a]n action must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a)(1). However, an executor or administrator may sue in his own name "without joining the person for whose benefit the action is brought." Fed.R.Civ. P. 17(a)(1)(A) and (B). Moreover, a court is not authorized to dismiss "an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed.R.Civ.P. 17(a)(3). "After ratification, joinder, or substitution" of the real party in interest, "the action proceeds as if it had been originally commenced by the real party in interest." *Id.* Pursuant to Rule 25, the court may substitute or join the transferee of an interest upon receipt of a motion so long as the motion is served in compliance with Fed.R.Civ.P. 4 & 5. Fed.R.Civ.P. 25(c) and (a)(3).

16

Clay's arguments in this regard are without merit. First, Langkau in his capacity as PR of the Estate was joined and substituted into the action in compliance with the Federal Rules of Civil Procedure. Moreover, because Clay challenged the district court's failure to provide him with notice and an opportunity to be heard before granting Langkau's substitution motion for the first time in his reply brief, we decline to consider it.

### H. Langkau's Improper Incorporation of Legal and Equitable Claims

In his reply brief, Clay argues that the district court lacked jurisdiction to grant Langkau legal or equitable relief because he improperly incorporated legal and equitable claims in his counterclaims against ONLAC and his cross-claims against Clay. Because Clay raises this argument for the first time in his reply brief, we decline to consider it.

We conclude that ONLAC properly commenced and maintained the interpleader action, and that the district court properly exercised subject matter jurisdiction over the action and the parties involved. Accordingly, we affirm as to the above-raised issues.

### III.

Clay argues that the district court erred in sanctioning him for failure to appear at the first pretrial hearing because the court (1) did not afford him a right

17

to be heard before imposing sanctions against him, and (2) denied his response to its order to show cause as to why sanctions should not be imposed based on hearsay.

We review a district court's order imposing sanctions for abuse of discretion. *See United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003). Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a district court may impose sanctions against a party or his attorney for failure to appear at a pretrial conference or to obey a pretrial order. Fed.R.Civ.P. 16(f)(1)(A) and (C). The district court must order a party, his attorney or both "to pay the reasonable expenses . . . incurred because of any noncompliance with [Rule 16], unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 16(f)(2). "The district court has broad discretion [to impose sanctions], and this is especially true when the imposition of monetary sanctions is involved." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1048 (11th Cir. 1994) (internal quotation marks omitted). *Pro se* litigants are "subject to sanctions like any other litigant." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

18

Because the district court afforded Clay an opportunity to be heard and imposed sanctions based on Clay's own failure to justify his absence from the first pretrial hearing, we affirm as to this issue.

IV.

"We review *de novo* a district court's interpretation of a state law." *McMahan v. Toto*, 311 F.3d 1077, 1081 (11th Cir. 2002). We "generally accord deference in diversity cases to a district court's interpretation of the law of the state in which it sits." *Davis v. Nat'l Med. Enterprises, Inc.*, 253 F.3d 1314, 1319 (11th Cir. 2001). "The interpretation of a contract is a question of law subject to *de novo* review on appeal." *S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992). We review a district court's findings of fact for clear error. *Wexler v. Anderson*, 452 F.3d 1226, 1230 (11th Cir. 2006). Courts interpret contracts consistent with the intent of the parties. *Siegel v. Whitaker*, 946 So.2d 1079, 1083-84 (Fla. Dist. Ct. App. 2006).

Pursuant to Florida law, "[a]ny individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person. . . ." Fla. Stat § 627.404(1) (2009).[1] Florida law further provides that "no

---

[1] It is noteworthy that Fla. Stat. § 627.404(1) is discussed as amended effective July 1, 2008. *Compare* Fla. Stat. § 627.404(1) (2008) *with* Fla. Stat. § 627.404(1) (2009). The amendments were "intended to clarify existing law." Fla. Stat. § 627.404 (2009), Amendment

person shall procure" insurance on the life of another individual "unless the benefits under [the policy] are payable to . . . any person having, at the time such contract was made, an insurable interest in the individual insured." *Id.* An insurable interest "arises whenever a potential beneficiary has a cognizable interest, whether pecuniary or arising from natural affection, in the life of the insured." *Brockton v. S. Life and Health Ins. Co.*, 556 So.2d 1138, 1139 (Fla. Dist. Ct. App. 1989) (internal quotation marks and emphasis omitted). The requirement that an individual contracting for insurance on the life of another have an insurable interest in that life is established to prevent "wagering contracts." *Lopez v. Life Ins. Co. of Am.*, 406 So.2d 1155, 1158 (Fla. Dist. Ct. App. 1981) ("It is assumed that the existence of such an insurable interest will counterbalance any temptation that might otherwise exist for a beneficiary to murder the insured for insurance proceeds.").

Neither statutory nor Florida common law appear to preclude a person who obtains an insurance policy in his own life from naming a beneficiary or assignee with no insurable interest. *See* Fla. Stat. § 627.404(1). This is consistent with another statutory provision that "[a]n individual has an insurable interest in his or her own life, body, and health." Fla. Stat. § 627.404(2)(b)(1). However, we have

Notes.

20

discovered no Florida case explicitly holding that one may insure his own life for the benefit of another having no insurable interest therein.

### A. Stipulation of Law

In this case, the district court confined its analysis to the question of whether Clay had an insurable interest in Ralph Langkau's life. Notably, the parties stipulated during the second pretrial hearing that, under Florida law, a life insurance beneficiary must have an insurable interest in the life of the insured at the time the beneficiary is named. The parties' stipulation appears to be in conflict with the plain language of Florida Statute § 627.404(1).

However, because Clay did not sufficiently challenge the validity of the stipulation, we may hold him to it. As a general rule, parties are bound by stipulations made before trial. *See G.I.C. Corp., Inc. v. United States*, 121 F.3d 1447, 1449-50 (11th Cir. 1997). "Before agreeing to a stipulation, a litigant has a duty to satisfy himself concerning the matters which his opponent proposes for stipulation." *Downs v. Am. Employers Ins. Co.*, 423 F.2d 1160, 1164 (5th Cir. 1970). A court, however, has discretion to disregard issues of law stipulated by the parties in order to grant a party relief from a stipulation in order to prevent manifest injustice. *See Equitable Life Assurance Soc'y v. MacGill*, 551 F.2d 978, 983-84 (5th Cir. 1977).

21

Because Clay has not challenged the validity of the stipulation in his initial brief, he has abandoned any challenge in this regard, and we will proceed pursuant to the law on insurable interest as stipulated to by the parties.

**B.      *Standing to Raise Clay's Lack of an Insurable Interest***

In holding the parties to their stipulation, the issue of Langkau's standing to raise the want of an insurable interest arises.  While Clay argues that the issue of his lack of an insurable interest was not raised properly because only ONLAC had standing to raise the issue, because Clay stipulated to the applicable law, we reject his challenge to his opponent's standing to raise the legal issue to which he stipulated.

**C.      *Clay's Entitlement to the Interpleaded Fund as Beneficiary***

**1.      *Relationship of Natural Affection***

On appeal, Clay offers no specific argument challenging the district court's finding that he did not have an insurable interest in Ralph Langkau's life based on their relationship of natural affection.  Because Clay does not advance a specific argument regarding natural affection in either his initial brief or his reply brief, he has abandoned it, and we decline to consider any argument in this regard.

**2.      *Pecuniary Interest***

22

On appeal, Clay argues that he had a pecuniary interest in Ralph Langkau's life sufficient to give rise to an insurable interest therein, which arose from contractual dealings pursuant to their land transaction.

An individual may have an insurable interest in the life of another person if he "has an expectation of a substantial pecuniary advantage through the continued life . . . of that other person and consequent substantial pecuniary loss by reason of the death . . . of that other person." Fla. Stat. § 627.404(2)(b)(3). Such a benefit does not arise where there is no present obligation or one certain to arise in the future. *See Flynn v. Prudential Ins. Co. of Am.*, 223 So.2d 86, 88 (Fla. Dist. Ct. App. 1969). Moreover, the arrangement giving rise to the pecuniary interest must be legally valid. *See BankAmerica Hous. Services v. Allstate Ins. Co.*, 771 So.2d 1218, 1220-21 (Fla. Dist. Ct. App. 2000) (discussing insurable interests in property). It is only necessary that the interest exist "at the time [the life insurance] contract was made . . . ; [t]he insurable interest need not exist after the inception date of coverage under the contract." Fla. Stat. § 627.404(1); *see McMullen v. St. Lucie County Bank*, 175 So. 721, 722 (Fla. 1937) ("[I]f the insurable interest existed at the time the insurance was secured, the fact that such interest is later cut off or for other reasons ceases to exist is of no consequence.").

Florida courts have held that "a promissory note given for purchase money,

23

in pursuance of the terms of an executory contract for the sale of land, is not without consideration, because the executory contract itself is a sufficient consideration for the promise of the purchaser to pay the purchase price . . . ." *Henderson v. Morton*, 147 So. 456, 457 (1933); *Parker v. Weiss*, 404 So.2d 820, 821 (Fla. Dist. Ct. App. 1981) (holding that, in a sale of realty, "the purchaser's promise to pay in exchange for the vendors' executory agreement was sufficient to form a binding contract").

Moreover, under Florida law, a deed is not necessary to pass equitable title. *See Martinez v. Kennedy Real Estate of Labelle, Inc., Pension Trust*, 565 So.2d 399, 400 (Fla. Dist. Ct. App. 1990). Florida courts have recognized land transactions similar to the transaction at issue here as contracts for deed. For instance, in *Bowman v. Saltsman*, the parties were deemed to have entered into an agreement for deed where the buyer promised to pay a certain sum for the desired property and, when all the money was paid, the buyer would receive legal title to the property. 736 So.2d 144, 145 (Fla. Dist. Ct. App. 1999). Under such an arrangement, "the buyer immediately receives and holds the equitable title and the seller holds the bare legal title only as security for the unpaid purchase price." *White v. Brousseau*, 566 So.2d 832, 835 (Fla. Dist. Ct. App. 1990).

24

Although the Mortgage Deed is ambiguous, it appears that Ralph Langkau's promise to pay as embodied in the Mortgage Note and Clay's promise to sell Ralph Langkau land subject to a mortgage in the Mortgage Deed constituted valid consideration for each other, such that the parties had entered into a binding contract. Because the parties entered into a valid contract on January 26, 2004, which was not invalidated by Clay's failure to deliver the deed to Ralph Langkau, it appears that Clay had a pecuniary interest in the life of Ralph Langkau sufficient to give rise to an insurable interest at that time. Accordingly, we reverse the district court's order finding Langkau, as personal representative of the estate of Ralph Langkau, entitled to the proceeds of decedent Ralph Langkau's insurance policy and remand to the district court to consider whether and to what extent Clay's insurable interest in the life of Ralph Langkau entitles him to the insurance proceeds as primary beneficiary.

### D.     Clay's Entitlement to the Interpleaded Fund as Assignee

On appeal, Clay argues that he was entitled to the insurance proceeds as assignee of the policy.

Because the district court erred in determining the merits of Clay's claim to the proceeds as assignee by adhering to the parties' stipulation, which had no application to assignments, we vacate the district court's order as to this issue and

25

remand with instructions to consider Clay's claim to the proceeds as assignee without regard to the stipulation concerning the necessity of an insurable interest.

### E.    *Clay's Entitlement to the Interpleaded Fund as Giftee*

On appeal, Clay offers no specific argument showing his entitlement to the insurance proceeds as giftee of the policy.  Therefore, he abandoned this claim, and we decline to consider any argument in this regard.

V.

On appeal, Clay argues that various errors committed during a pretrial hearing and the bench trial by the district court and counsel for Langkau violated his state and federal constitutional rights to due process or resulted in a manifest injustice.

We review the district court's adherence to Rule 16 of the Federal Rules of Civil Procedure for abuse of discretion.  *Burdis v. Tx. & Pac. Ry. Co.*, 569 F.2d 320, 323 (5th Cir. 1978).  We review "assertions of constitutional error *de novo*." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009).

Rule 16, which pertains to pretrial procedure, provides that the district court

> may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as:

(1) expediting disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because of lack of management;

(3) discouraging wasteful pretrial activities;

(4) improving the quality of the trial through more thorough preparation; and

(5) facilitating settlement.

Fed.R.Civ.P. 16(a). To these ends, the district court may "formulat[e] and simplify[ ] the issues, and eliminat[e] frivolous claims or defenses." Fed.R.Civ.P. 16(c)(2)(A).

Because Clay cannot show that he was prejudiced by any alleged error committed in his absence during the first pretrial hearing, his arguments in this regard are unavailing. Moreover, we decline to consider the alleged errors Clay identifies with respect to the bench trial because Clay failed to raise any point of error during the trial, and, thus, he cannot raise these errors on appeal. *See* Fed.R.Civ.P. 46.

VI.

Clay argues that he is entitled to costs, expenses, and damages against Langkau and ONLAC pursuant to Fla. Stat. § 57.105 and damages against ONLAC pursuant to Fla. Stat. § 627.428(1). "We review the decision to grant or

deny attorneys' fees for an abuse of discretion." *Davis v. Nat'l Med. Enterprises, Inc.*, 253 F.3d 1314, 1318-19 (11th Cir. 2001) (reviewing court's award of attorney fees under Florida law in diversity suit).

Only a prevailing party is entitled to relief under Fla. Stat. § 57.105(1) (mandating an award of attorney's fees to the prevailing party if certain conditions are met) or Fla. Stat. § 627.428(1) (providing that a prevailing party shall be entitled to attorney's fees as against the insurer). Because Clay cannot show that he is the prevailing party, we conclude that he is not entitled to attorney's fees, pursuant to Fla. Stat. §§ 57.105(1) or 627.428(1), at this time.

VII.

Although Clay identifies the motion for reconsideration as a subject of the instant appeal in his initial brief and adopts his motion for reconsideration in support of his brief, he articulates no argument concerning why he is entitled to relief from the district court's order on the motion. Accordingly, we deem any argument concerning the district court's denial of the motion for reconsideration abandoned.

### *Conclusion*

Based on our review of the record and the parties' briefs, we hold that (1) this appeal is not moot; (2) the interpleader action was properly commenced

28

and maintained; (3) the district court did not abuse its discretion in imposing sanctions on Clay; (4) none of the alleged procedural errors warranted reversal; and (5) no error was shown in the district court's denial of fees or Clay's motion for reconsideration. However, we reverse the district court's order finding Langkau, as personal representative of the estate of Ralph Langkau, entitled to the proceeds of decedent Ralph Langkau's insurance policy and remand to the district court for further proceedings to determine whether and to what extent Clay was entitled to the proceeds as beneficiary or assignee of the policy.

**AFFIRMED in part and VACATED and REMANDED in part.**