[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11495

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:07-cv-00332-VMC-SPC

KENNARD WARFIELD, JR.
MARY ELLEN WARFIELD,

                                                    Plaintiffs - Appellants,

versus

JAMES A. STEWART,
TERRILL L. STEWART,
as Executrix of the Estate of James A. Stewart,
VIP REALTY GROUP, INC.,
JAMES D. HALL,

                                                    Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 7, 2011)

Before TJOFLAT, WILSON and SEYMOUR,* Circuit Judges.

_____

   * Honorable Stephanie K. Seymour, United States Circuit Judge for the Tenth Circuit,
sitting by designation.

PER CURIAM:

Kennard Warfield, Jr. and Mary Ellen Warfield were purchasers of real estate property in a sale brokered by James D. Hall and VIP Realty Group, Inc. (collectively, "the Realtors"). The Warfields sued the Realtors for their alleged failure to disclose material facts relating to the purchase of the property.[1] A jury found in favor of the Realtors on all counts. The district court awarded the Realtors attorney's fees and costs, pursuant to a prevailing parties provision of the contract for sale of the property. The Warfields appeal on several grounds. We affirm the judgment in favor of the Realtors on the merits, but we reverse the award of attorney's fees.

**I.**

In 2005, Mr. Warfield purchased a home on Sanibel Island, Florida from James and Terrill Stewart. The home was originally built in 1989 in accordance with a variance from local zoning ordinances (the "Variance"). The Variance limits the property's home to no more than two thousand square feet and requires that more than fifty percent of the enclosed and climate controlled area of the

_____

[1] The Warfields also sued James and Terrill Stewart, the previous owners of the property. The Stewarts and the Warfields reached a settlement before trial.

home be within the Altered Land Zone of the property.

In 1993, the property was purchased by Ms. Pamela Whitney. She constructed improvements to the home's lower level that violated a local ordinance. In 1998, Ms. Whitney sold the home to the Stewarts. A VIP sales agent, Robin Humphrey, acted as the Stewarts' agent in the sale. As part of the transaction, Ms. Whitney prepared a Florida Real Property Disclosure Statement (the "Whitney Disclosure"), which stated that there were "restrictions affecting additions, improvements or replacement of the property," and disclosed that the lower level of the house was constructed without permits, in violation of "zoning, land use or administrative regulations." Rec., Pl. Ex. 35. Ms. Whitney testified in the present action that she was not aware of the Variance, and that the Whitney Disclosure's reference to "restrictions affecting additions, improvements or replacement of the property," only referred to the ordinance that had been violated by the lower-level improvements, not to the limitations in the Variance. Around the time of the sale to the Stewarts, Mr. Humphrey received a copy of the Whitney Disclosure.

The Stewarts removed the lower-level improvements to the home and brought the property into compliance with local ordinances. In 2005, they decided to sell the property and again hired Mr. Humphrey to be their agent. Another VIP

agent, Mr. Hall, also acted as a broker in the sales transaction. In the brokerage agreement between VIP and Mr. Warfield, VIP disclosed various duties it owed to Mr. Warfield under Florida Law. In the agreement, VIP stated that it had a duty to disclose "all known facts that materially affect the value of [the] residential real property and are not readily observable to the buyer." Rec., Pl. Ex. 20 at 3. The brokerage agreement did not contain a provision regarding attorney's fees.

Prior to making an offer on the property, Mr. Warfield told Mr. Hall he was interested in building an addition onto the home. Although Mr. Hall's response to this statement is disputed by the parties, it is undisputed that Mr. Hall did not inform Mr. Warfield of the limitations in the Variance. The Warfields did not learn about the Variance until after they had purchased the property.[2]

Mr. Warfield purchased the home from the Stewarts for $1.4 million. The Sales Contract was signed by Mr. Warfield and the Stewarts. It identified "VIP/Hall" as the cooperating broker and "VIP/Humphrey" as the listing broker, but neither Mr. Hall, Mr. Humphrey, nor VIP were signatories to the contract. Rec., Pl. Ex. 21 at 2. The Sales Contract contained an attorney's fee provision ("Paragraph R"):

> **R. ATTORNEY'S FEES; COSTS:** In any litigation, including

---

[2] The Variance apparently was not recorded in the chain of title to the property.

breach, enforcement or interpretation, arising out of this Contract, the prevailing party in such litigation, which, for purposes of this Standard, shall include Seller, Buyer and any brokers acting in agency or nonagency relationships authorized by Chapter 475, F.S., as amended, shall be entitled to recover from the non-prevailing party reasonable attorney's fees, costs and expenses.

*Id.* at 4.

In this lawsuit, the Warfields alleged various tort and breach of contract claims arising out of the Realtors' failure to disclose the Variance. In the Second Amended Complaint, the Warfields requested rescission of the Sales Contract, damages, and attorney's fees pursuant to Paragraph R. The Realtors denied knowing about the Variance before the Warfields purchased the property. Both parties moved for summary judgment, which the district court denied. A jury thereafter found in favor of the Realtors on all counts. Although the Realtors did not request attorney's fees in their pleadings, after the jury's verdict they moved for and were awarded attorney's fees and costs as prevailing parties under Paragraph R of the Sales Contract.

On appeal, the Warfields contend the district court improperly denied their motion for summary judgment and their motion for judgment as a matter of law. They also assert the district court erred by failing to instruct the jury that under Florida law Mr. Humphrey, an independent agent, was to be considered an

employee of VIP.  Finally, the Warfields claim the Realtors are not entitled to attorneys fees under the Sales Contract.

## II.

### A.  Summary Judgment Denial

As the Supreme Court recently held in *Ortiz v. Jordan*, 131 S. Ct. 884, 888-89 (2011), a party may not appeal an order denying summary judgment after a full trial and judgment on the merits.  *Accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285-86 (11th Cir. 2001).  After trial, the proper mechanism for seeking judgment as a matter of law is through Fed. R. Civ. P. 50(b).  *Ortiz*, 131 S. Ct. at 893.  As a result, we do not review the denial of summary judgment.

### B.  Judgment as a Matter of Law

The Warfields argue the district court committed reversible error by failing to enter judgment as a matter of law on two of their claims.  The Warfields contend they moved under Fed. R. Civ. P. 50(b) for judgment as a matter of law after the jury issued its verdict, but the record does not support this assertion.

Under Rule 50(a), a party may move for judgment as a matter of law before the case is submitted to the jury.  "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."  Fed. R. Civ. P.

50(a)(2). After a jury verdict, pursuant to Rule 50(b), a party may "renew consideration of issues initially raised in a pre-verdict motion for judgment as a matter of law." *Caban-Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir. 1996). "Fed. R. Civ. P. 50(b) limits the grounds for a post-verdict motion for judgment as a matter of law to those asserted in the Rule 50(a) motion." *Arce v. Garcia*, 434 F.3d 1254, 1259 n.15 (11th Cir. 2006). Thus, "[f]or a court to be obligated to consider a post-trial motion for judgment as a matter of law [under Rule 50(b)], the moving party must have made a motion for such a judgment under Rule 50(a) . . . ." *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1300 (11th Cir. 2002).

There is no indication in the record that the Warfields moved for judgment as a matter of law under Rule 50(a). During oral argument before this court, the Warfields' counsel conceded no such motion was made. The Warfields also never articulated to the district court the grounds for their 50(b) motion. Immediately after the jury verdict was entered, their counsel asked for judgment notwithstanding the verdict but offered no factual or legal argument to support the motion.

Where a movant has failed to move for judgment as a matter of law under Rule 50(a), but then later tries to make a renewed motion for judgment as a matter

7

of law under Rule 50(b), "this Circuit in some cases has indicated that we will not conduct any review at all. Other cases from this court indicate that we will perform the very limited review of whether the trial court committed plain error which, if not noticed, would result in a manifest miscarriage of justice." *Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1051 (11th Cir. 2002) (per curium) (citations and internal quotation marks omitted). Under either approach, the Warfields' appeal fails.

By failing to articulate any reason why they were entitled to judgment as a matter of law, the Warfields raised no issues for the district court to decide. "[A] district court does not have the authority under Rule 50(b) to rule *sua sponte* on issues not raised by the parties." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004). The district court did not err in rejecting[3] the Warfields' inadequate 50(b) motion, and they are not entitled to judgment as a matter of law.

## C. Jury Instructions

The Warfields next argue the district court erred by failing to instruct the jury that under Florida law, "sales agents such as Mr. Humphrey, though they may be characterized as independent contractors, are to be considered employees."

---

[3] We have seen nothing in the record to indicate that the district court actually ruled on the Warfields' faulty Rule 50(b) motion. It is clear, however, that the court did not grant the motion. We therefore assume the motion was denied.

Aplt. Br. at 29 (citing Fla. Stat. § 471.01(m)(2)) (emphasis omitted). According to the Warfields, Jury Instruction 2 improperly limited the scope of a corporation's actions to those of its "employees."[4] They claim that under the jury instructions, VIP would not be liable for the acts, omissions, and knowledge of Mr. Humphrey, and that this created prejudicial harm. The Realtors counter that the Warfields failed to apprise the district court of this particular objection. They also maintain there was no prejudicial harm created by the instruction.

"A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "We interpret Rule 51 strictly, and require a party to object to a jury instruction or jury verdict form *prior* to jury deliberations in order to preserve the issue on appeal." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999).

---

[4] Instruction Number 2, as given to the jury, states:

> The fact that a corporation is involved as a party must not affect your decision in any way. A Corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only though people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Rec., Doc. 347 at 3.

9

We agree with the Realtors that the Warfields failed to properly object to the given instruction. The Warfields made no written objection to Instruction 2's language when it was included in the Realtors' proposed jury instructions. During the charge conference, the district court invited the parties to voice any objections to its proposed instructions. The Warfields' counsel initially raised no concern about Instruction 2. After the Warfields indicated they had no further objections to the instructions, the district court asked counsel for VIP and Mr. Hall to raise any concerns they had. The Realtors' counsel asked the court to amend Instruction 8 by using the Florida model instruction, rather than the Eleventh Circuit model instruction.[5] When asked to respond to the proposed change, the Warfields' counsel replied that the language in Instruction 8 was appropriate as is, and further asserted that if the court changed Instruction 8 to bring in Florida law, rather than using the pattern instructions, then Instruction 2 should also be changed to reflect Florida law. The district court clarified the objection by stating, "I know you're saying that if I'm going to make the one change, I need to make – [then] I'm going to have a problem with needing to make other changes. Is that [it] in essence, Mr. MacKenzie?" Rec., Doc. 355 at 31. The Warfields' counsel

---

[5] The Realtors' proposed change to Instruction 8 would have defined a broker's standard of care for negligence using a professional standard of care.

10

agreed that was correct. The district court left both instructions unaltered.

At no point during the hearing did the Warfields suggest that Instruction 2 was flawed for reasons independent of any proposed changes to Instruction 8. Because the Warfields failed to distinctly state the matter objected to and the grounds for the objection, *see* Fed. R. Civ. P. 51(c)(1), its objection to Instruction 2 was not properly preserved for appeal.

"A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2). To prevail under plain error review, "a party must prove that the challenged instruction was an incorrect statement of the law and [that] it was probably responsible for an incorrect verdict, leading to substantial injustice." *Farley*, 197 F.3d at 1329-30 (alteration in original) (internal quotation marks omitted). "In other words, the error of law must be so prejudicial as to have affected the outcome of the proceedings." *Id.* at 1330 (internal quotation marks omitted). The Warfields fail to overcome this steep hurdle.

The Realtors do not contest the Warfields' claim that Mr. Humphrey should be treated as an employee under Florida state law. Instead they argue that Instruction 2 adequately addressed the substance of the Warfields' purported request, and even if the instruction was deficient, it had no effect on the outcome

11

of the trial.

The Realtors are simply incorrect that Instruction 2, which explained that a corporation is only responsible for the acts of its employees made within the scope of employment, is substantively the same as an instruction which states that independent contractors of real estate brokers are to be treated as employees for agency purposes. The difference between an independent contractor and an agent is axiomatic in agency law. *See, e.g.*, *Jones v. City of Hialeah*, 368 So. 2d 398, 400 (Fla. Dist. Ct. App. 1979) ("The factor which distinguishes a principal agent relationship from the independent contractor relationship is the required control and direction by the principal over the conduct of the agent."). The Warfields' preferred instruction differs from the instruction that was given.

But the Warfields have not shown that the instruction is "probably responsible for an incorrect verdict," *Farley*, 197 F.3d at 1330. During trial, the Realtors never suggested that VIP was not liable for the actions and omissions of Mr. Humphrey. In fact, their real estate expert testified that VIP *was* liable for the actions of its licensees, including Mr Humphrey. Nor does Instruction 2 state that corporations may never be responsible for their independent contractors. The jury was given no reason to immunize VIP from the actions and knowledge of Mr. Humphrey. As a result, it cannot be said that Instruction 2 probably affected the

12

outcome of the proceedings.  The Warfields have not established plain error.

## D.  Attorney's Fees

Finally, the Warfields contend the district court erred by awarding attorney's fees to VIP and Mr. Hall.  We review *de novo* a district court's interpretation of a contract's attorney's fee provision.  *Frankenmuth Mut. Ins. Co. v. Escambia Cnty.*, 289 F.3d 723, 728 (11th Cir. 2002).  When attorney's fees are authorized, we review the district court's decision to grant them for an abuse of discretion.  *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1318–19 (11th Cir. 2001).

We first address the district court's conclusion that the Warfields were estopped from contesting the applicability of Paragraph R because they had sought attorney's fees against the Realtors under this very provision in their Second Amended Complaint.  The court commented that the Warfields' "change of position [regarding the applicability of the sales contract to the lawsuit] after the jury rendered a zero verdict is quite telling."  Rec., Doc. 391 at 6–7.  The Warfields maintain the district court erred by holding them judicially estopped from contesting the applicability Paragraph R of the Sales Contract.  We agree.

A district court's application of judicial estoppel is reviewed for abuse of discretion.  *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).

13

"The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). The Supreme Court has recognized certain factors courts consider when deciding the applicability of judicial estoppel:

> (1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.* (quoting *New Hampshire*, 532 U.S. at 750-51). This list is not exhaustive, *id.*, but it illustrates that estoppel was inappropriate here.

The Warfields' current position is clearly inconsistent with the one they took earlier in the litigation: they originally claimed attorneys fees from the Realtors under Paragraph R should they prevail in the lawsuit, and they now assert various reasons why the provision is either inapplicable to this case or invalid. However, they never had the opportunity to persuade the district court to accept their earlier position because they were not prevailing parties. Accordingly, the court was not mislead by their initial position. Because the Warfields did not

14

"succeed" on their claim for attorney's fees, the district court abused its discretion in holding them estopped from contesting the applicability of Paragraph R.

The Warfields also contend the Realtors cannot recover attorney's fees under Paragraph R because (1) they were not signatories to the Sales Contract, (2) this litigation did not arise out of the Sales Contract so its attorney's fees provision does not cover the Realtors' claim for fees, (3) there was never a valid sales contract, and (4) the Realtors waived their right to contractual attorney's fees because they failed to plead them. Because we agree with proposition (2), we need not reach the other issues.

Under Paragraph R of the Sales Contract, the prevailing party of any litigation "arising out of this Contract" is "entitled to recover from the non-prevailing party reasonable attorney's fees, costs, and expenses." Rec., Pl. Ex. 21 at 4. Florida courts strictly construe contractual attorney's fee provisions. *Gibbs Constr. Co. v. S.L. Page Corp.*, 755 So. 2d 787, 790–91 (Fla. Dist. Ct. App. 2000); *see also Ohio Realty Inv. Corp. v. S. Bank of W. Palm Beach*, 300 So. 2d 679, 682 (Fla. 1974). We therefore must determine whether the Warfields' fraudulent misrepresentation claim against the Realtors arose out of the Sales Contract.

Neither party has found, nor have we, a Florida case in which a non-party to a contract, who has not signed the contract and who has no rights or obligations

15

under the contract, has been held entitled to attorney's fees "arising out of" that contract. The Warfields assert that the district court improperly relied on *Caufield v. Cantele*, 837 So. 2d 371 (Fla. 2002), to conclude that this litigation "arose out of" the Sales Contract. We agree. At issue in *Caufield* was whether a tort claim could "arise out of" a contract. The Florida Supreme Court held that "claims of fraudulent misrepresentation concerning the subject matter of the contract [may] 'arise out of the contract.'" *Id.* at 378. It said that a tort suit arises out of a contract "where the dispute occurs as a fairly direct result of the performance of contractual duties . . . ." *Id.* at 379 (quoting *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001)) (internal quotation marks omitted). The court explained that the tort and the contract were so "inextricably intertwined" in such a case that "the tort complained of necessarily arose out of the underlying contract." *Id.*

But in *Caufield*, unlike this case, the litigation involved a fraudulent misrepresentation claim *between parties to the contract*. Similarly, in *Telecom Italia, SpA*, quoted favorably by the Florida Supreme Court in *Caufield*, this court concluded that certain tort claims did not "arise out of" the contract where the claims were "based on allegations of tortious interference and conspiracy relating to the disruption of a separate contract" between the defendant and another party

16

that did not contain the "arising out of" language. 248 F.3d at 1113. We explained that "[d]isputes that are not related – with at least some directness – to performance of *duties specified by the contract* do not count as disputes 'arising out of' the contract." *Id.* at 1116 (emphasis added).

Here, the Realtors' duty to disclose material facts relating to the property arose from their contractual relationship with the Warfields under the *brokerage agreement*, not the Sales Contract. The Realtors were not parties to the Sales Contract. They had no duties under the Sales Contract, nor any rights. Under the brokerage agreement, however, the Realtors had a duty to disclose to the Warfields "all known facts that materially affect the value of residential real property and are not readily available to the buyer." Rec., Pl. Ex. 20 at 2. Furthermore, the Warfield's breach of contract claim in their Second Amended Complaint was based on the Realtors' alleged breach of the *brokerage agreement*, not breach of the Sales Contract. Because the Warfields' claims against the Realtors do not relate to the performance of duties required by the Sales Contract, this litigation did not arise out of the Sales Contract.

*Schumacher Properties, Inc. v. Rellinger*, 911 So. 2d 193 (Fla. Dist. Ct. App. 2005), relied on by the Realtors, is not to the contrary. In *Schumacher*, the buyer and seller entered into a sales contract for the purchase of property, and the

17

buyer paid a $25,000 deposit. *Id.* at 194. The contract included an attorney's fees provision identical to the one here, providing attorney's fees to "the prevailing party, whether Buyer, Seller, or Broker," in any litigation "arising out of" the contract. *Id.* at 195. The broker was not a named party to the overall sales contract, but the broker was named in the commission provision of the sales contract and that particular provision was signed by the broker, the buyer, and the seller. *Id.* at 195-96. Prior to closing, the buyer rescinded the contract, but the broker, who had also acted as the escrow agent, refused to return the buyer's deposit. *Id.* at 195.

The buyer sued both the seller and the broker for return of its escrowed deposit. The broker filed a counterclaim against the buyer and a cross-claim against the seller for breach of contract and misrepresentation for failure to pay the broker's commission. *Id.* Although the district court permitted the buyer to rescind the contract, the broker obtained a judgment in its favor against the seller for a 3% commission.[6] Because the commission agreement was part of the sales contract, the litigation over its payment was directly connected to the contract.

---

[6] Under Florida law, "attorney's fees may be recovered under a prevailing-party attorney's fee provision contained [in a contract] even though the contract is rescinded or held unenforceable." *Katz v. Van Der Noord*, 546 So.2d 1047, 1049 (Fla. 1989). "The legal fictions which accompany a judgment of rescission do not change the fact that a contract did exist." *Id.*

Unlike the broker in *Schumacher*, the Realtors did not sign the Sales Contract, had no rights or obligations thereunder, and did not prevail in the litigation on any claim against them under the Sales Contract. As a result, *Schumacher* is inapposite.

Because the Warfields' claims against the Realtors did not "arise out of" the Sales Contract, the Realtors were not entitled to recover attorney's fees under that contract. Given the lack of an attorney's fees provision in the brokerage agreement, the district court erred in awarding attorney's fees to the Realtors.

## III.

Based on the foregoing, we AFFIRM the judgment on the merits in favor of Mr. Hall and VIP, but REVERSE the award of attorney's fees to Mr. Hall and VIP.

19