UNITED STATES of America,
Plaintiff,

v.

Maria L. IPPOLITO (a/k/a/ Marie Ippolito), individually and as personal representative of the Estate Of Robert C. Singleton; and Polk County, Florida, Defendants.

Case No. 8:10–cv–02415–MSS–TBM.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 14, 2012.

Mara Anne Strier, U.S. Department of Justice, Washington, DC, for Plaintiff.

Maria L. Ippolito, Tampa, FL, pro se.

### ORDER

MARY S. SCRIVEN, District Judge.

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Summary Judgment. (Dkt. 79) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiff's Motion (Dkt. 79), as described herein.

## I. BACKGROUND

### A. Case History

This case arises out of Plaintiff's action to reduce to judgment federal income tax assessments (including penalties and interest) against defendant Robert Singleton pursuant to 26 U.S.C. §§ 7401 and 7403.

(Dkt. 1 at 1) The Plaintiff filed the instant action on October 27, 2010. (Dkt. 1) The Plaintiff joined Defendants Maria Ippolito, Christopher Ippolito, Charlie's Seafood Enterprises Inc., Citrus County, Polk County and Richard Ulvestad as parties who may claim an interest in the Subject Properties: 6731 Linden Drive, Homosassa Springs, Florida ("Linden Drive") and Fox Place 1. ("Subject Properties") (Dkt. 1 at ¶¶ 6–11) Christopher Ippolito and Citrus County have both disclaimed any interest in the Subject Properties and have been dismissed from this action. (Dkt. 34, 35) On February 17, 2011, the Clerk entered default against Charlie's Seafood. (Dkt. 33) On October 11, 2011, the Clerk entered default against Richard Ulvestad. (Dkt. 71) Maria Ippolito and Polk County remain in the action and claim an interest in the Subject Properties. The parties stipulated to the priority of Polk County's lien on the Subject Property, 7698 Fox Place, Lake Wales, Florida ("Fox Place 1"). (Dkt. 42)

The Court entered default judgment against defendant Mr. Singleton on Count I of the complaint on March 18, 2011, in the amount of $2,961,308.72 for his unpaid federal income tax liabilities for the years 1993 through 1998. (Dkt. 44) Defendant subsequently died on May 29, 2011. (Dkt. 64) Ms. Ippolito was substituted for Robert Singleton as personal representative of his Estate on September 2, 2011. *Id.* The Plaintiff wishes to foreclose its liens on the Subject Properties. (Dkt. 1 at 5)

### B. Undisputed Facts

The following facts are undisputed in this case:

Robert Singleton is indebted to the United States for his unpaid federal income tax liabilities for the years 1993 through 1998 in the amount of $2,961,308.72 as of March 18, 2011. (Dkt. 44) The IRS began an examination of Sin-

gleton's 1993 and 1994 federal income tax liabilities in 1997 and subsequently added the 1995 through 1998 tax years into the examination. (Dkt. 1 at 13–16) Notice of the assessments and demands for payment were made on Defendant; however, he refused to pay the entire amount of tax liabilities. (Dkt. 1 at 19)

Maria Ippolito has known Robert Singleton for many years. (Dkt. 79–4 at 15 ¶¶ 16–21) They met when Ippolito was working during the summer for Singleton's father's packing company. (Dkt. 79–4 at 11) Ippolito and Singleton married in September 2008. (Dkt. 79–3 at ¶ 7; Dkt. 79–3 at 25)

Singleton purchased fourteen properties in Citrus County, Florida between the years 1993 and 1997. (Dkt. 79–3 at ¶ 4) The public records of Citrus County, Florida reflect that Singleton transferred nine of those properties to Maria Ippolito between 1997 and 1998. (Dkt. 79–3 at ¶ 4; Dkt. 79–3 at 9) Singleton sold the remaining properties in 1997 and 1998. (Dkt. 79–3 at ¶ 4) In 2001, the IRS recorded a Notice of Federal Tax Lien in Citrus County against Singleton. (Dkt. 79–3 at ¶ 5) In 2004, Ippolito transferred the Linden Drive property back to Singleton. (Dkt. 79–3 at ¶ 5; Dkt. 79–3 at 12) Subsequently, Mr. Singleton transferred the Linden Drive property back to Ms. Ippolito. (Dkt. 82 at 11)

In January of 2005, Singleton, through Charlie's Seafood Enterprises, Inc., purchased Fox Place 1. (Dkt. 79–3 at ¶ 6) Singleton purchased Fox Place 1 with his own money, and Fox Place 1 became Singleton's personal residence. (Dkt. 79–4 at 29–30) Maria Ippolito and Christopher Ippolito deny any involvement in Charlie's Seafood, although they were both listed as directors or officers of Charlie's Seafood Enterprises. (Dkt. 79–3 at ¶¶ 14–19)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir.2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir.2007)). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Evidence is reviewed in the light most favorable to the non-moving party. *Fennell*, 559 F.3d at 1216 (citing *Welding Servs., Inc.*, 509 F.3d at 1356).

A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1321 (11th Cir.2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) ("conclusory allegations without specific supporting facts have no probative value."). If material issues of fact exist that would not allow the Court to resolve an issue as a

matter of law, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir.1999).

### B. Robert C. Singleton's ownership interest in Linden Drive

The Plaintiff argues that a lien arose in its favor, based on the October 2000 and October 2001 assessments, immediately upon Singleton's acquisition of Linden Drive in January 2004. They contend that absent a lien entitled to priority under 26 U.S.C. § 6323, the United States' tax lien obtains priority. The Defendant responds by claiming that she is a "purchaser" of Linden Drive. For the reasons stated, infra, the Court **GRANTS** Plaintiff's Motion on this issue.

 Pursuant to Sections 6321 and 6322 of the Internal Revenue Code, when a taxpayer, despite demand for payment, neglects or refuses to pay an assessed federal income tax liability, federal tax liens arise upon all property and rights to property belonging to that taxpayer. 26 U.S.C. §§ 6321–6322. Federal law determines priority of competing liens asserted against taxpayer's property once a tax lien is established. *Aquilino v. U.S.*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). Priority for purposes of federal law is governed by the common-law principle that "the first in time is the first in right." *United States v. McDermott*, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993); *See also* 26 U.S.C. § 6323(a). With respect to tax liens, 26 U.S.C. § 6323 provides that a federal tax lien shall not be valid against a purchaser, holder of security interests, mechanic's lienor and judgment lien creditor until a notice of federal tax lien is filed in the designated recording office. *Id.* § 6323(a).

To be a "purchaser" under 26 U.S.C. § 6323(h)(6), a person must acquire an interest in property which is valid under local law against subsequent purchasers without actual notice of a federal tax lien. Under Florida law, "no transfer of real property shall be good and effectual in law or equity against creditors or subsequent purchasers for valuable consideration and without notice unless the same is recorded." Fla. Stat. § 695.01.

 Against this standard, the Defendant's contention that she is a "purchaser" of Linden Drive fails. Defendant contends that she has 100 percent ownership of Linden Drive and that all properties transferred from Mr. Singleton to Defendant were purchased by her in good faith and as a bona fide purchaser. (Dkt. 82 at 4–12) Supporting her claim, the Defendant has supplied a deed[1] transferring Linden Drive from Singleton to her in 2007. (Dkt. 82 at 11) As noted previously, however, Mr. Singleton acquired title to Linden Drive in 1997 and transferred it to Defendant in 1998. (Dkt. 79–3 at 2–3 ¶ 5(a)-(b)) Subsequently, Defendant transferred Linden Drive back to Singleton in 2004. (Dkt. 79–3 at 3 ¶ 5(d)) Once the property was transferred back to Mr. Singleton a lien in favor of the United States arose. The acquired lien was based on the October

---

1. To successfully resist a motion for summary judgment, the party against whom summary judgment is sought must demonstrate, by affidavits or other relevant and competent evidence that a genuine issue of fact exists. *United States v. Spitzer*, 245 Fed.Appx. 908, 910 (11th Cir.2007) (citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991)). Even though Defendant's documentary evidence does not meet this evidentiary standard in many respects, for purposes of this order the Court will extend leniency toward the Defendant in regard to evidence presented because the Defendant is a pro se litigant. Nevertheless, it is to no avail because the evidence submitted, even if accepted true, does not defeat the United States' prior lien.

2000 and October 2001 assessments[2] levied by the United States and subsequently recorded in 2001. (Dkt. 79–3 at 3 ¶ 5(c); Dkt. 73–3 at 11) The law presumes that a subsequent purchaser is on notice of validly recorded liens. *See, e.g., United States v. Feinstein,* 717 F.Supp. 1552, 1557 (S.D.Fla.1989) (stating that a federal tax lien is sufficient when a reasonable inspection of public records would have revealed existence of notice). Thus, even if determined to be valid, Singleton's transfer to Defendant in 2007 was ineffectual to defeat the prior lien of the United States. The 2007 transfer occurred and the related deed was recorded after the lien of the United States attached to the property. Accordingly, Plaintiff's motion for summary judgment that Singleton was the sole owner of Linden Drive at the time its lien attached and that the priority established thereby prevails over Defendant's claimed subsequently acquired interest is **GRANTED.**

## C. Charlie's Seafood's status as a nominee for Robert Singleton; The United States' Tax Liens Priority over Fox Place 1

■ Plaintiff next seeks to foreclose Charlie's Seafood's interest in the Subject Property claiming it was only acting as a nominee for Mr. Singleton when Fox Place 1 was purchased. Defendant rebuts this contention by stating that she is good faith, bona fide purchaser for value. She concedes that she had no knowledge of Mr. Singleton's tax liability and she had no involvement in Charlie's Seafood. (Dkt. 79–4 at 25–27) For the reasons stated, infra, the Court **GRANTS** Plaintiff's Motion on this issue.

■■ A taxpayer's federal tax lien attaches to any interest they hold in property, including property held by a nominee. *G.M. Leasing Corp. v. United States,* 429

U.S. 338, 350–351, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). A nominee holds bare legal title to property for the benefit of another. *United States v. Dornbrock,* 2008 WL 769065 *4 (S.D.Fla.2008) (citing *United States v. Gilbert,* 244 F.3d 888, 902 (11th Cir.2001)). The court in *Dornbrock* addressed the nominee theory stating that "the theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." 2008 WL 769065 *4 (S.D.Fla. 2008) (citing *In re Richards,* 231 B.R. 571, 578 (E.D.Pa.1999)). Generally federal courts apply the law of the forum state; however, Florida does not have a bright-line test for determining nominee ownership. *Dornbrock,* 2008 WL 769065 at 5. Therefore, federal law will apply in determining nominee ownership in this case. *Grippo v. Perazzo,* 357 F.3d 1218, 1222 (11th Cir.2004).

Factors that the *Dornbrock* court considered in determining whether property is being held by a nominee of the taxpayer include: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses. *See Dornbrock,* 2008 WL 769065 *5, aff'd per curiam, 309 Fed.Appx. 359 (11th Cir. 2009).

**2.** (Dkt. 41–1 at ¶¶ 4, 5, 7)

Robert Singleton purchased Fox Place 1 in January 2005 through Charlie's Seafood. (79–3 at ¶ 6(a)) There is no dispute that Singleton's money was used to purchase Fox Place 1, even though he purchased the property through Charlie's Seafood. (Dkt. 79–4 at 29–30) Fox Place 1 was Robert Singleton's personal residence. (Dkt. 79–4 at 33) Singleton paid the bills for Fox Place 1 from 2005 through 2007, including taxes and electricity. (Dkt. 79–4 at 33) Therefore, undisputed evidence shows that Charlie's Seafood held Fox Place 1 as Singleton's nominee. Accordingly, Plaintiff's motion for summary judgment as to Charlie's Seafood's status as a nominee for Robert Singleton is **GRANTED.**

■ Additionally, the Plaintiff contends that its liens attach to Singleton's Interest in Fox Place 1. Pursuant to Sections 6321 and 6322 of the Internal Revenue Code, liens attach to all property and rights to property belonging to, or subsequently acquired by, taxpayer. *Id.* §§ 6321–6322. As mentioned *supra*, there is no dispute that Singleton's money was used to purchase Fox Place 1. (Dkt. 79–4 at 29–30) At the time of purchase, the IRS had already assessed income tax, interest and penalties against Singleton for the years 1993 through 1998. (Dkt. 41–1 at ¶¶ 4, 5, 7) Consequently, the federal tax liens attached to Fox Place 1 at the time of Singleton's purchase in 2005. (79–3 at ¶ 6(a)) Defendant contends that Singleton transferred Fox Place 1 to her as payment for providing care and assistance to him during his illness and that she is therefore a bona fide purchaser entitled to priority over the lien of the United States. (Dkt. 79–4 at 31–34)

Defendant does not qualify as a "purchaser" under 26 U.S.C. § 6323(h)(6). As stated previously, to qualify as a "purchaser" under Section 6323(h)(6), a person must acquire an interest in property that is valid under local law against subsequent purchasers without actual notice of a prior interest. Under Florida law, "no transfer of real property shall be good and effectual in law or equity against creditors or subsequent purchasers for valuable consideration and without notice unless the same is recorded." Fla. Stat. § 695.01. The Defendant does not offer evidence of a transfer of Fox Place 1 to her, no proof that such a transfer was duly recorded, and no proof of consideration paid for it other than her unverified contentions. Therefore, the Plaintiff's tax liens, which attached to Fox Place 1 simultaneously with Singleton's January 2005 purchase through his nominee, Charlie's Seafood, are entitled to priority over any interest Defendant claims to have acquired subsequently. Accordingly, Plaintiff's motion for summary judgment that the United States possesses a valid and enforceable lien interest Fox Place 1 and that its lien interest has priority over Defendant's claimed interest **GRANTED.**

### III. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff United States of America's Motion for Summary Judgment (Dkt. 79) is **GRANTED** as to Count II of Plaintiff's Complaint (To foreclose federal tax lien on Linden Drive);

2. Plaintiff United States of America's Motion for Summary Judgment (Dkt. 79) is **GRANTED** as to Count III of Plaintiff's Complaint (To foreclose federal tax lien on Fox Place 1 held by Charlie's Seafood as the nominee of Singleton) and to establish that its lien interest has priority over Defendant's claimed interest;

3. The **Clerk** is directed to enter judgment in favor of the Plaintiff pursuant to Fed.R.Civ.P. 58; and,

4. The **Clerk** is directed to terminate all motions and to **CLOSE** this case.