Eleanor L. Ross, United States District Judge *1202 Presently before the Court are several matters. The Court's rulings and conclusions are set out below.
I. Background
This case arises from an interpleader action involving $418,145.57 in excess funds generated from a tax sale of real property located at 270 17th Street, N.W., Unit 4406 in Atlanta, Georgia ("the Subject Property"). As an overview, in 2011, Iphigenia McGrue purchased the Subject Property by Limited Warranty Deed. However, in 2012, the ad valorem taxes were not fully paid. As a result, two (2) Tax Fieri Facias ("Fi. Fas."), or liens, were issued and recorded on the Subject Property, one (1) for the City of Atlanta and one (1) for Fulton County/Georgia. On September 1, 2015, the Fulton County Sheriff conducted a tax sale pursuant to the City of Atlanta Fi. Fa. only ("the Tax Sale"). At the Tax Sale, the Subject Property was purchased for $420,000. The difference between the ad valorem taxes evidenced by the City of Atlanta Fi. Fa. and the amount paid for the Subject Property was $418,145.57. This amount represents the excess funds at issue in this case.
On October 3, 2016, the Fulton County Sheriff filed a Petition for Interpleader to determine how the excess funds of $418,145.57 should be paid. Petition [Doc. 1-1]. Five (5) Parties responded to the Petition: Iphigenia McGrue, Wellington & Associates, LLC, PHH Mortgage Company, the United States Internal Revenue Service; and the Georgia Department of Revenue. This order addresses the priority of the claims to the $418,145.57 in excess funds asserted by these Parties.
A. Facts
The detailed facts are as follows. On November 18, 2011, Iphigenia McGrue acquired the Subject Property by Limited Warranty Deed recorded in Fulton County, Georgia. [Docs. 75-1 at ¶ 6; 78-1 at ¶¶ 1-2; 81-1 at ¶¶ 1-2; 82-1 at ¶¶ 1-2]. The Settlement Statement for the closing reflects that McGrue purchased the Subject Property for $518,700. [Docs. 78-1 at ¶ 4; 81-1 at ¶ 4; 82-1 at ¶ 4]. To finance the purchase, McGrue executed and recorded a first priority security deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Equity Loans, LLC, in the principal amount of $324,058 ("the Security Deed"). [Docs. 75-1 at ¶ 7; 78-1 at ¶ 5-6; 81-1 at ¶ 5-6; 82-1 at ¶ 5-6].
In 2012, McGrue transferred title to the Subject Property, by quitclaim deed, to Wellington & Associates, LLC ("Wellington") and recorded the transfer. [Docs. 75-1 at ¶ 9; 78-1 at ¶ 8; 81-1 at ¶ 8; 82-1 at ¶ 8]. The quitclaim deed reflects a date of August 1, 2012, but it was not actually signed by McGrue until December 3, 2012. [Docs. 78-1 at ¶¶ 8-9; 81-1 at ¶ 9; 82-1 at ¶ 9]. Wellington is a Georgia limited liability company with its sole members being McGrue and her son, Shawn Jones. [Docs. 78-1 at ¶ 10; 81-1 at ¶ 10; 82-1 at ¶ 10]. Wellington was formed for the benefit of McGrue's son but conducts no business. [Doc. 75-1 at ¶ 10]. Besides forms filed with the Georgia Secretary of State, Wellington has no other governing documents. [Docs. 78-1 at ¶ 10; 81-1 at ¶ 10; 82-1 at ¶ 10]. Wellington has not paid any federal or state income taxes, though it may have had some "minimal income" in the past. [Docs. 78-1 at ¶ 11; 81-1 at ¶ 11; 82-1 at ¶ 11]. Wellington has never borrowed money, and has no bank accounts, credit or *1203 credit history, or credit approvals. [Docs. 78-1 at ¶ 11; 81-1 at ¶ 11; 82-1 at ¶ 11]. McGrue is the only source of funds for Wellington, and she pays the mortgage and expenses associated with the Subject Property. [Doc. 75-1 at ¶ 11].
i. The Tax Sale
For the year of 2012, the ad valorem taxes on the Subject Property were not fully paid. [Docs. 78-1 at ¶ 14; 81-1 at ¶ 15; 82-1 at ¶ 14]. As a result, on January 11, 2014, two (2) Tax Fi. Fas. were issued and recorded, one (1) for the City of Atlanta and one (1) for Fulton County/Georgia. [Docs. 78-1 at ¶ 14; 81-1 at ¶ 15; 82-1 at ¶ 14]. Immediately upon recording, these Fi. Fas. were transferred to Investa Services of Ga Christiana Trust as Custodian ("Investa"). [Docs. 78-1 at ¶ 15; 81-1 at ¶ 16; 82-1 at ¶15].
On September 1, 2015, the Fulton County Sheriff conducted a Tax Sale pursuant to the City of Atlanta Fi. Fa. only. [Docs. 75-1 at ¶ 14; 78-1 at ¶ 16; 81-1 at ¶ 17; 82-1 at ¶ 16]. The Subject Property was purchased for $420,000 by Deed Co. LLC, which obtained a tax deed for the Subject Property. [Docs. 75-1 at ¶ 14; 78-1 at ¶ 16; 81-1 at ¶ 17; 82-1 at ¶ 16]. The tax deed was recorded on October 7, 2015. [Docs. 75-1 at ¶ 14; 78-1 at ¶ 16; 81-1 at ¶ 17; 82-1 at ¶ 16]. The difference between the ad valorem taxes evidenced by the City of Atlanta Fi. Fa. and the amount paid by Deed Co. LLC for the tax deed was $418,145.57, representing the excess funds at issue in this case. [Docs. 75-1 at ¶ 16; 78-1 at ¶ 19; 81-1 at ¶ 20; 82-1 at ¶ 19]. At the time of the Tax Sale, PHH Mortgage Corporation was servicing the mortgage loan underlying the Security Deed, and CoreLogic Tax Services, LLC was its tax servicer. [Docs. 78-1 at ¶ 17; 81-1 at ¶ 18; 82-1 at ¶ 17].
Meanwhile, Investa retained the 2012 Fulton County/Georgia Fi. Fa. and did not send it to the Sheriff for a levy or sale. [Docs. 78-1 at ¶ 20; 81-1 at ¶ 21]. Instead, on September 17, 2015, about two (2) weeks after the Tax Sale, Investa as Custodian for GSRAN-Z, LLC ("GSRAN-Z")[1] paid $504,000 to Deed Co. LLC for the redemption of the Subject Property in favor of Wellington. [Docs. 78-1 at ¶ 20; 81-1 at ¶ 21]. The Quitclaim Deed of Redemption and Notice of Super Priority Lien referencing this transaction were recorded on October 14, 2015 (the " 'Super-Priority' redemption lien"). [Doc. 74-2 at ¶ 28].
ii. PHH Mortgage Obtains "Super-Priority" Redemption Lien and Remaining Fi. Fa.
On February 5, 2016, MERS as nominee for Equity Loans, LLC assigned the Security Deed to the Subject Property to PHH Mortgage Corporation, recording the transfer. [Docs. 75-1 at ¶ 7; 78-1 at ¶ 21; 81-1 at ¶22; 82-1 at ¶ 5]. On February 15, 2016, PHH caused the tax servicer, CoreLogic Tax Services, LLC, to tender the full $520,043.91 that would have been sufficient to satisfy both the "Super-Priority" redemption lien and the 2012 Fulton County/Georgia Tax Fi. Fa, which at that time were held by GSRAN-Z. [Docs. 78-1 at ¶ 24; 81-1 at ¶ 25]. The same day, GSRAN-Z executed and assigned the "Super-Priority" redemption lien to PHH, which was recorded. [Docs. 78-1 at ¶ 26; 81-1 at ¶ 27]. Also on February 15, 2016, GSRAN-Z, executed and assigned to PHH the 2012 Fulton County/Georgia Fi. Fa. [Docs. 78-1 at ¶ 27; 81-1 at ¶ 28]. By virtue of these three (3) transfers-the (1) assignment of the 2012 Fulton County/Georgia Fi. Fa., the (2) assignment of the "Super-Priority" redemption lien, and the (3) assignment of *1204 the Security Deed-PHH makes claims to the $418,145.57 in excess funds.
iii. McGrue's Unpaid Taxes and Resulting Liens
On November 12, 2013, amidst the above-mentioned transfers regarding the Subject Property, a delegate of the United States Secretary of Treasury recorded a Notice of Federal Tax Lien in Fulton County, Georgia against Iphigenia McGrue. [Docs. 75-1 at ¶ 5; 78-1 at ¶ 13; 81-1 at ¶¶ 13-14; 82-1 at ¶ 13]. The lien was for unpaid federal income taxes for tax years 2010, 2011, and 2012. [Docs. 75-1 at ¶ 5; 78-1 at ¶ 13; 81-1 at ¶¶ 13-14; 82-1 at ¶ 13]. The 2010 tax liability bears a September 5, 2011 date of assessment; the 2011 tax liability bears a May 21, 2012 date of assessment; and the 2012 tax liability bears a June 17, 2013 date of assessment. [Doc. 75-1 at ¶ 2-4]. McGrue currently owes the United States at least $89,818.74 in unpaid federal income taxes for the 2000, 2011, and 2012 tax years. [Doc. 75-1 at ¶ 1].
Similarly, McGrue owes the State of Georgia approximately $197,711.93 in state income taxes for tax years 2009 through 2014. [Doc. 74-2 at ¶ 1]. During two (2) of these years, McGrue filed tax returns under two (2) different social security numbers, one ending in -1746 and the other ending in -0040. [Doc. 74-2 at ¶¶ 4, 11-12]. The tax years and dates of assessments for the two social security numbers are as follows:
Tax Date of Assessment for Social Date of Assessment for Social Year Security Number -1746 Security Number -0040 2009 August 31, 2012 & October 21, N/A 2016 2010 August 31, 2012 & October 21, N/A 2016 2011 October 21, 2016 October 21, 2016 2012 October 21, 2016 October 21, 2016 2013 N/A October 21, 2016
[See generally id. ] As a result of McGrue's unpaid taxes, the Georgia Department of Revenue recorded three (3) state tax executions in Fulton County, Georgia against McGrue. [See generally id. ] The first occurred on November 1, 2012, was under McGrue's social security number ending in -1746, and was for the 2009 and 2010 tax years. [Id. at ¶ 4]. The second occurred on October 24, 2016, was under McGrue's social security number ending in -1746, and was for tax years 2009 thru 2012.[2] [Id. at ¶ 9]. The third occurred on October 24, 2016, was under McGrue's social security number ending in -0040, and was for the 2011, 2012, and 2013 tax years. [Id. at ¶ 16]. Due to McGrue's unpaid taxes, the United States IRS and the Georgia Department of Revenue (collectively "the Government Respondents") assert claims to the $418,145.57 in excess funds.
B. Procedural History
On October 3, 2016, the Sheriff for Fulton County, Georgia filed a Petition for Interpleader to determine how the $418,145.57 in excess funds should be distributed. Petition [Doc. 1-1]. The Petition *1205 alleges that six (6) parties may have claims or liens of record upon the excess funds:
(1) Iphigenia McGrue, by virtue of ownership of the Subject Property at the time of the Tax Sale;
(2) Wellington & Associates, LLC, by virtue of ownership of the Subject Property at the time of the Tax Sale;
(3) PHH Mortgage Company by virtue of an "Assignment of Security Deed, Assignment of Claimed Super First Priority Tax Deed Redemption Lien, and Assignment of All Right, Title and Interest in Excess Proceeds of Tax Sale;"
(4) The United States IRS by virtue of a federal lien for unpaid federal income taxes owed by Iphigenia McGrue;
(5) The Georgia Department of Revenue by virtue of a "State Execution Number REV 120176653; and
(6) FDS Holdings Inc. d/b/a First Data Merchant Services by virtue of a Judgment Lien owed by Iphigenia McGrue.
Id. at ¶¶ 17-22. Each of these Parties, except FDS Holdings, Inc., have appeared as Respondents in this case.
On November 2, 2016, the United States, as a named party to the Petition, timely removed the action to this Court. Notice of Removal [Doc. 1]. On the same day, Wellington, McGrue, and the Georgia Department of Revenue[3] filed answers. [Docs. 2, 5]. Wellington and McGrue requested that the excess funds be disbursed to them [Doc. 2], while the Georgia Department of Revenue requested a judgment in the amount of $ 177,041.70, plus further interest, in the "highest priority available under the law." [Doc. 5]. On November 9, 2016, PHH filed an answer requesting the entirety of the excess funds based upon its three (3) interests, or, alternatively, under a theory of an equitable lien. [Doc. 4]. Finally, on December 5, 2016, the United States filed an answer requesting judgment in the amount of $125,378.72, plus statutory interest, and that the Court accord the lien of the United States the highest priority available under the law. [Doc. 11].[4]
The $418,145.57 in excess funds are currently deposited in the Court's registry.[5] Pending now before the Court are three (3) motions for summary judgment filed respectively by the United States [Doc. 67], PHH [Doc. 73], and the Georgia Department of Revenue [Doc. 74]. In addition, McGrue and Wellington jointly filed a Motion for Extension of Time to File Response to PHH Mortgage's Motion for Summary Judgment. [Doc. 77]. These motions have been fully briefed and are now ripe for the Court's review.
II. Motion for Extension of Time [Doc. 77]
The Court turns first to the procedural matter presented in McGrue and Wellington's *1206 Motion for Extension of Time to Respond to PHH's Motion for Summary Judgment. [Id. ] In this motion, McGrue and Wellington request the Court for an eleven (11) day extension by which to file their response to PHH's Motion for Summary Judgment.[6] After a review of the motion, and opposition to the same [Doc. 80], the Court finds good cause for an extension of the deadline and grants the motion. [Doc. 77]. Because the Court grants this motion, and McGrue and Wellington filed their response within their requested eleven (11) day window [Doc. 82], the Court will consider their filing.
III. Motions for Summary Judgment
The Court turns now to the three (3) motions for summary judgment filed respectively by the United States [Doc. 67], PHH [Doc. 73], and the Georgia Department of Revenue [Doc. 74]. Each of these three (3) Respondents request some form or priority over the others.
A. Legal Standard
A Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law. Id. The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249, 106 S.Ct. 2505. When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." GEBAM, Inc. v. Inv. Realty Series I, LLC, 15 F. Supp. 3d 1311, 1315-16 (N.D. Ga. 2013) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005) ); see United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.") (quotation omitted). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. Id.
In an interpleader action, the summary judgment stage may differ than in a typical case. This is because the purpose of interpleader actions is to permit "an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, [to avoid]
*1207 multiple liability by asking the court to determine the asset's rightful owner." In re Mandalay Shores Co-op. Hous. Ass'n Inc., 21 F.3d 380, 383 (11th Cir. 1994). Typically, interpleader actions proceed in two (2) stages. Ohio Nat. Life Assur. Corp. v. Langkau ex rel. state of Langkau, 353 F. App'x 244, 249 (11th Cir. 2009) (citing Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 262 (3d. Cir. 2009) ). In the first stage, the Court should determine whether interpleader is proper. Ohio Nat. Life, 353 F. App'x at 249. Here, the Court has already completed this step as evidenced by the undersigned's Order directing that the $418,145.57 in excess funds to be deposited in the Court's registry. [Doc. 15]. The Court is now at the second stage where the Court evaluates the rights of the Parties with respect to the interpleaded funds. Ohio Nat. Life, 353 F. App'x at 249. Accordingly, the Court must evaluate the arguments of each of the Parties who claim the interpleaded funds and determine the relative priorities.
B. Discussion
The United States, Georgia Department of Revenue, and PHH simultaneously move for summary judgment, each arguing that its claim to the excess funds take some form of priority over the others. [See Docs. 67, 73, 74]. McGrue and Wellington jointly filed a response to PHH's motion, wherein they indicate that they do not dispute the Government Respondents' claims, but only argue that PHH is not entitled to the excess funds. [See Doc. 82].
i. Characterization of the Excess Funds
As a threshold matter, many of the Parties' arguments turn on the characterization of the $418,145.57 in excess funds. Thus, prior to determining the Respondents' relative priorities, the Court will first determine this issue. According to United States, Georgia Department of Revenue, McGrue, and Wellington, pursuant to Georgia law, the excess funds are considered personal property. [See Docs. 67-1 at 6; 74-1 at 8-9; 82 at 11] (citing DLT List, LLC v. M7VEN Supportive Hous. & Dev. Grp., 301 Ga. 131, 135, 800 S.E.2d 362 (2017) (" DLT List II")). PHH disagrees, arguing that other Georgia case law supports the conclusion that the excess funds are properly characterized as real property. [See generally, e.g., Doc. 73].
The Court finds that the $418,145.57 in excess funds from the Tax Sale are personal property. In DLT List II, the Georgia Supreme Court granted certiorari to determine "whether a redeeming creditor after a tax sale has a first priority claim on excess tax sale funds." 301 Ga. at 131-32, 800 S.E.2d 362. To answer this question, the Court examined the Georgia statutory authorities governing tax sales and liens. Id. at 134, 800 S.E.2d 362. The Court determined that based on the statutory language, "the priority lien acquired by a redeeming creditor is exclusive to real property." Id. at 135, 800 S.E.2d 362 (emphasis added). However, the redeeming creditor did not have priority over the excess funds from a tax sale because "excess funds from a tax sale are personal property that is separate and distinct from the real property itself." Id. (citations omitted) (emphasis in the original).
PHH urges the Court to disregard this clear language and look to Georgia's "older precedent," which it contends the Georgia Supreme Court departed from to reach its conclusion in DLT II. [Doc. 75 at 4]. As a federal court sitting in diversity, this Court is "required to apply the law as declared by the state's highest court." Saxton v. ACF Indus., 254 F.3d 959, 965 n.9 (11th Cir. 2001) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ). Here, the Georgia Supreme *1208 Court in DLT II expressly relied on the principle that excess funds from a tax sale are personal property in reaching its conclusion on the presented question. This Court will not proceed in contradiction to the state's highest court's clearly announced principles. The $418,145.57 in excess funds resulting from the Tax Sale in this case are properly characterized as personal property.
ii. Priority of Respondent United States
Having determined the proper characterization of the excess funds, the Court will proceed to determine the relative priorities, commencing with the United States. The United States holds a lien for unpaid federal income taxes for tax years 2010, 2011, and 2012. [Docs. 75-1 at ¶ 5; 78-1 at ¶ 13; 81-1 at ¶¶ 13-14; 82-1 at ¶ 13]. By virtue of this lien, the United States asserts a claim to the excess funds.[7]
To assess the priority of federal tax liens, Courts should "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach." Drye v. United States, 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). From there, the priority of the federal tax lien is determined by federal law. Atl. States Constr., Inc. v. Hand, 892 F.2d 1530, 1534 (11th Cir. 1990) ("Since a federal tax lien is wholly a creature of federal law, the consequences of a lien that attaches to property interests, e.g., priority determinations, are matters of federal law.").
Pursuant to O.C.G.A. § 48-4-5(a), several parties may have an interest in the excess funds generated from a tax sale including the record owner(s) of property that is subject to a tax sale, each record owner of a security deed affecting the property, as well as any other party having any recorded equity interest or claim in such property at the time of the tax sale. See O.C.G.A. § 48-4-5 (a) ;[8] see also *1209 DLT List, LLC v. M7ven Supportive Housing & Development Group, 335 Ga. App. 318, 322, 779 S.E.2d 436 (2015) (" DLT List I") ("[E]xcess funds should be distributed to the owner of the property if no lienholder existed at the time of the tax-sale, or to any lienholders (in addition to the owner) if the lienholders had a valid interest arising prior to the tax sale.").
Here, it is undisputed that McGrue has an interest in the $418,145.57 in excess funds. At the time of the Tax Sale, Wellington held title to the Subject Property via quitclaim deed. [Docs. 78-1 at ¶¶ 8-9; 81-1 at ¶¶ 8-9; 82-1 at ¶¶ 8-9]. Respondents agree that because McGrue exercises dominion and control over Wellington, Wellington holds title to the Subject Property as McGrue's nominee. [See Docs. 67-1 at 6, 74-1 at 8] (citing United States v. Ippolito, 838 F. Supp. 2d 1287, 1291 (M.D. Fla. 2012) (describing various factors used in determining when one party holds title to property as nominee for another, the most important of which is dominion and control)).[9] As McGrue's nominee, Wellington "holds bare legal title to property for [McGrue's] benefit." Ippolito, 838 F. Supp. 2d at 1291 (citing United States v. Gilbert, 244 F.3d 888, 902 (11th Cir. 2001) ). Thus, McGrue has a property interest in the $418,145.57 in excess funds.
After determining that McGrue has an interest in the excess funds pursuant to state law, the Court must now look to federal law to assess the United States' priority. Atl. States Constr., 892 F.2d at 1534. Federal tax liens arise by operation of law upon the assessment of tax. 26 U.S.C. §§ 6321, 6322. The tax lien attaches to all property and rights to property of the tax payer, "including property acquired after the date of the assessment." Phillips & Jacobs, Inc. v. Color-Art, Inc., 553 F. Supp. 14, 16 (N.D. Ga. 1982) (citing 26 U.S.C. §§ 6321, 6322 ). "Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that the first in time is the first in right." United States v. McDermott, 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993) (citing United States v. New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954) ).
As relevant to this case, the United States assessed McGrue's federal tax liabilities on the following dates: tax year 2010 - September 5, 2011; tax year 2011 - May 21, 2012; and tax year 2012 - June 17, 2013. [Doc. 75-1 at ¶ 2-4]. Thus, federal tax liens in the excess funds arose on these dates. See Phillips & Jacobs, 553 F. Supp. at 16 (noting that a federal tax lien attaches to all property and rights to property of the tax payer, "including property acquired after the date of the assessment"). As the earliest attaching liens in the excess funds, the United States is afforded first priority over all other Respondents for its 2010 and 2011 tax liens.
However, the United States' priority of its 2012 tax lien must yield to Georgia Department of Revenue's lien for tax years 2009 and 2010. To have priority over a federal tax lien, a state tax lien must be earlier in time, and must be choate. See Atl. States Const., 892 F.2d at 1534, 1540 n.20 ; Rice Inv. Co. v. United States, 625 F.2d 565, 568 (5th Cir. 1980) (noting that when a federal tax lien is involved, "in order to be 'first in time,' the nonfederal lien must first have become *1210 'choate' ").[10] The Georgia Department of Revenue's lien was choate upon its recorded execution on November 1, 2012 which recorded state tax liens for tax years 2009 and 2010 under McGrue's social security number ending in -1764. See O.C.G.A. § 48-2-56 (e) ; [Doc. 74-2 at ¶ 4]. Because this execution occurred before the United States assessed McGrue's 2012 tax liability, which was on June 17, 2013, it is afforded a higher priority than the United States' 2012 tax lien.
In sum, the United States' claims have complete priority over those of PHH, McGrue, and Wellington,[11] but only partial priority over those asserted by the Georgia Department of Revenue.
PHH opposes this result based on three (3) arguments. First, PHH argues that because it holds the 2012 Fulton County/Georgia Fi. Fa., its claim based upon that lien is entitled to first priority. [Doc. 73-2 at 3-4]. To support this argument, PHH relies on 26 U.S.C. § 6323(b)(6). Pursuant to 26 U.S.C. § 6323(b)(6), "even though notice of a lien imposed by § 6321 has been filed," which in this case are the assessments of federal tax liability which gave rise to the federal tax liens,
such lien shall not be valid-
[w]ith respect to real property, as against a holder of a lien upon such property, if such lien is entitled under local law to priority over security interests in such property which are prior in time, and such lien secures payment of-(A) a tax of general application levied by any taxing authority based upon the value of such property ....
26 U.S.C. § 6323(b)(6). PHH argues that because the 2012 Fulton County/Georgia Fi. Fa. is entitled to priority over the Security Deed on the Subject Property pursuant to Georgia law, PHH may take advantage of this statute which also gives such liens priority over federal tax liens.
The Court disagrees. The plain language of this statute references real property. 26 U.S.C. § 6323(b)(6) ("[w]ith respect to real property...."). As determined, supra , the $418,145.57 in excess funds in this case are personal property. DLT List II, 301 Ga. at 135, 800 S.E.2d 362. Thus, PHH may not rely upon this statute which gives priority based upon real property.
Second, PHH argues the because it holds the "Super-Priority" redemption lien, it is entitled to the excess funds. [Doc. 73-2 at 7]. However, like their first argument, this contention relies on the excess funds being characterized as real property. [See id. at 13]. Because the Court concludes that the $418,145.57 in excess funds are personal property, this argument fails.
Third, PHH argues that it is entitled to the excess funds based on its Security Deed to the Subject Property. [Doc. 73-2 at 3-4]. Specifically, PHH contends that "liens on the land attach to the sales proceeds upon a forced sale of the land." [Id. at 15]. PHH characterizes this contention as "longstanding [under] Georgia law," but fails to account for key principles applicable when property is redeemed from a tax sale.
In Georgia, "if a property owner fails to pay ... property taxes, the [taxing entity] may issue a writ of fieri facias and conduct a sale of the property to satisfy the unpaid taxes." DLT List I, 335 Ga. App. at 321, 779 S.E.2d 436 (citing *1211 O.C.G.A. § 48-4-1 ). The purchaser at the tax sale receives a tax deed, which "vests the purchaser with a defeasible ... fee interest in the property which continues for ... one year." Id. (citation omitted). During this year, the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the purchasers the purchase price plus any taxes paid and interest. Id. (citation omitted). "[I]f no one redeems the property, all the liens and ownership interests in the property existing prior to the tax sale are swept away at the close of the year, leaving the tax-sale purchaser with clear title to the property." Id. However, "[i]f the property is redeemed, the tax sale is essentially rescinded." Nat'l Tax Funding, L.P. v. Harpagon Co., LLC., 277 Ga. 41, 42, 586 S.E.2d 235 (2003). Thus, in the event of redemption, the existing liens on the property remain, as opposed to being wiped out after the redemption period expires.
Here, it is undisputed that the property was redeemed in favor of Wellington. [Docs. 78-1 at ¶ 20; 81-1 at ¶ 21]. Thus, the liens that existed prior to the tax sale remain against the underlying real property. As such, PHH's interest based on its Security Deed, which was attached to the property prior to the Tax Sale, remains on the Subject Property and does not attach to the excess funds. It follows then that PHH does not have a claim in the $418,145.57 excess funds based upon its Security Deed. Consequently, all related arguments put forth by PHH concerning its interest in the excess funds as created by the Security Deed must fail.
In sum, after assessing the arguments and evidence, the United States' claims to the excess funds based on its federal tax liens are awarded complete priority over the claims by PHH, McGrue, and Wellington. Additionally, the United States' claims to the excess funds for its 2010 and 2011 federal tax liens are awarded higher priority than the claims by Georgia Department of Revenue. However, the United States' claim based on its 2012 federal tax lien must yield to the Georgia Department of Revenue's claims for state tax executions for tax years 2009 and 2010.
iii. Priority of Respondent Georgia Department of Revenue
Having determined that the Georgia Department of Revenue's claims regarding its state tax executions for tax years 2009 and 2010 have higher priority than that of the United States' 2012 federal tax lien, the Court now turns to a determination of the Georgia Department of Revenue's priority vis a vis PHH.[12] This analysis requires a determination of the priority between the Georgia Department of Revenue's state tax executions on the one hand, and PHH's three (3) interests (i.e. the 2012 Fulton County/Georgia Fi. Fa., the "Super-Priority" redemption lien, and the Security Deed) on the other.
The Court looks to state law to determine the priority of liens among non-federal lienors. Estate of Frazier v. Dist. Dir., I.R.S., No. 1:91-CV-1877-JTC, 1992 WL 472026, at *7 (N.D. Ga. Oct. 14, 1992) (noting that claims separate from those of the federal government "must be determined by State law"). As previously determined, PHH's "Super-Priority" redemption lien does not entitle it to the $418,145.57 in excess funds, because excess funds from a tax sale are personal property. DLT List II, 301 Ga. at 135, 800 S.E.2d 362. Similarly, for the above-stated reasons, PHH's Security Deed does not provide an interest in the $418,145.57 in excess *1212 funds. However, the Court reaches a different result as to PHH's first interest, the 2012 Fulton County/Georgia Fi. Fa.
As to PHH's claim to the excess funds based upon 2012 Fulton County/Georgia Fi. Fa., PHH and the Georgia Department of Revenue agree that Georgia law affords that claim general priority since it arose on January 1, 2012, prior to any of the Georgia Department of Revenue's state tax executions. See O.C.G.A. § 48-2-56 (d) ; see also 1 PINDAR'S GEORGIA REAL ESTATE LAW AND PROCEDURE § 4:47 (7th ed. 2013) (describing that "ad valorem real property tax becomes a lien on the land as of January 1 of each year, even though the valuation, rate, and amount remain to be fixed during the remainder of the year"). PHH and the Georgia Department of Revenue also agree that ad valorem tax liens "extend[ ] not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer." Mulligan v. Sec. Bank of Bibb County, 280 Ga. App. 248, 249, 633 S.E.2d 629 (2006). However, these Respondents disagree as to the amount of priority the Court should afford the 2012 Fulton County/Georgia Fi. Fa.
The Georgia Department of Revenue, citing O.C.G.A. § 48-2-56, argues that because the 2012 Fulton County/Georgia Fi. Fa. is in the name of both the State of Georgia and Fulton County [See Doc. 73-16], only the "Georgia portion," that is, the state portion of the taxes owed, has priority over its claims, while any amounts owed to Fulton County has no such priority. [Doc. 78 at 4]. The Court agrees.
Pursuant to O.C.G.A. § 48-2-56, "[l]iens for taxes shall rank among themselves as follows: (1) Taxes due the state; (2) Taxes due counties of the state...." O.C.G.A. § 48-2-56 (b). "[B]y adopting this statute, the [Georgia] legislature intended to assign priority to tax liens based upon the status of the taxing entity, regardless of the date the lien was created." Vesta Holdings I v. Tax Comm'r, 259 Ga. App. 717, 719, 578 S.E.2d 293 (2003). Thus, pursuant to Georgia law, state tax liens take priority over those imposed by the county, thereby elevating only the state portion of PHH's 2012 Fulton County/Georgia Fi. Fa. above the Georgia Department of Revenue's claims.
PHH disagrees, asserting that the 2012 Fulton County/Georgia Fi. Fa. has complete priority over Georgia Department of Revenue's later recorded state execution tax liens. [Doc. 73-2 at 6]. To support this contention, PHH relies upon In re Tuggle, 30 B.R. 718, 719 (Bankr. N.D. Ga. 1983). However, PHH's reliance on this case is premised upon its Security Deed creating an interest in the $418,145.57 in excess funds. Having already determined the Security Deed does not create an interest in the $418,145.57 in excess funds from this tax sale because the Subject Property has been redeemed, Tuggle does not apply. PHH presents no other case law to warrant a result that is different from the direct application of the statute. Thus, the Court concludes that only the state portion of the 2012 Fulton County/Georgia Fi. Fa. has priority over the claims by the Georgia Department of Revenue.[13]
In sum, the claims asserted by the Georgia Department of Revenue are subordinate to the United States' federal tax liens for 2010 and 2011. However, the Georgia Department of Revenue's claims from its state tax executions for tax years 2009 and 2010 have a higher priority than that of the United States' 2012 federal tax *1213 lien. Then, as to PHH's 2012 Fulton County/Georgia Fi. Fa., only the state portion of the taxes owed takes priority over the Georgia Department of Revenue's claims. As to PHH's other interests, and as to McGrue and Wellington, the Georgia Department of Revenue claims are afforded complete priority.
iv. Priority of Respondent PHH
The Court turns last to a determination of the priority of PHH. Having already determined PHH's priority vis a vis the Government Respondents, the Court now assesses its priority against McGrue and Wellington.
Wellington holds a quitclaim deed to the Subject Property. [Docs. 78-1 at ¶¶ 8-9; 81-1 at ¶ 9; 82-1 at ¶ 9]. As previously determined, because McGrue exercises dominion and control over Wellington, Wellington holds title to the Subject Property as McGrue's nominee. Conversely, PHH holds the 2012 Fulton County/Georgia Fi. Fa., the "Super-Priority" redemption lien, and the Security Deed. Because the Court has already determined that PHFPs "Super-Priority" redemption lien and Security Deed do not create an interest in the $418,145.57 in excess funds, the Court focuses only upon its priority regarding the 2012 Fulton County/Georgia Fi. Fa.
The Court finds that PHH's claim regarding the 2012 Fulton/Georgia Fi. Fa. has priority over any claims to the excess funds asserted by McGrue and Wellington. Ad valorem tax liens "extend[ ] not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer." Mulligan, 280 Ga. App. at 249, 633 S.E.2d 629. As assignee of the 2012 Fulton/Georgia Fi. Fa., PHH may collect from the excess funds. Scott v. Vesta Holdings I, LLC, 275 Ga. App. 196, 200, 620 S.E.2d 447 (2005).
McGrue and Wellington argue that because they were not responsible for paying the ad valorem taxes that gave rise to this lien, they should not now be required to satisfy the lien out of the excess funds. [Doc. 82 at 7-10]. Instead they contend that PHH, as the current holder of the Security Deed, now has this obligation, and may not make a claim to the excess funds to complete it. [Id. ]
The Court cannot reach this issue. As PHH correctly points out, the legal issue in this case is the relative priorities of the Respondents. See School Bd. of Broward County v. JV Constr. Corp., No. 03-60005-CIV-MOR/GAR, 2004 WL 1304058, at *8 (S.D. Fla. Apr. 23, 2004) (the interpleader "action itself is simply for the purpose of determining what the rights and priorities were at the time the action was filed") (quoting Texaco, Inc. v. Ponsoldt, 118 F.3d 1367, 1370 (9th Cir. 1997) ). Here, it is undisputed that PHH holds the 2012 Fulton County/Georgia Fi. Fa. [Doc. 82-1 at ¶ 27]. Thus, the Court must determine the relative priorities based on this fact.
In sum, the claims asserted by PHH based upon its "Super-Priority" redemption lien and the Security Deed do not provide an interest in the $418,145.57 of excess funds. PHH's claim based upon the 2012 Fulton County/Georgia Fi. Fa. has partial priority over the claims by the Georgia Department of Revenue and complete priority over the claims to the excess funds by McGrue and Wellington.
IV. Summary
After a review of the Parties' arguments contained within their motions for summary judgment, the Court determines that the priority of the Respondents' claims to the excess funds is as follows:
1. The United States' 2010 and 2011 Federal Tax Liens;
2. The "Georgia portion" of PHH's 2012 Fulton County/Georgia Fi. Fa.;
3. The Georgia Department of Revenue's state tax execution for tax years 2009 and 2010;
*1214 4. The United States' 2012 Federal Tax Lien;
5. The Georgia Department of Revenue's state tax executions for tax years 2011, 2012, and 2013;
6. The "Fulton County portion" of PHH's 2012 Fulton County/Georgia Fi. Fa.;
7. Remaining funds to Record Owner Wellington.[14]
From the Court's review, the only matter that remains outstanding, in addition to the disbursement of the excess funds, is PHH's alternative claim to the funds based upon a theory of an equitable lien/constructive trust. [See Docs. 4 at 15-16; 73-2 at 1]. Because the time for filing summary judgment motions has passed, the Court is prepared to move forward with a trial on PHH's alternative claim. However, the Court will allow time for PHH to file a notice indicating how it intends to proceed on that claim. The other Respondents are permitted to file a response to that notice within the time set out by the Local Rules of this Court.
In the event that PHH does not file a notice, the Court directs the Parties to file a joint motion for disbursement in accordance with the relative priorities listed above. This joint motion should include a proposed order granting the disbursement and must be filed in compliance with Local Rule 67.1C(2), NDGa.
V. Conclusion
For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Respondent United States' Motion for Summary Judgment [Doc. 67], Respondent PHH Mortgage Company's Motion for Summary Judgment [Doc. 73], and Respondent Lynette T. Riley's Motion for Summary Judgment [Doc. 74]. The Court DIRECTS Respondent PHH to file a notice indicating how it would like to proceed on its remaining claim within fourteen (14) days from the date of entry of this order. In the alternative, the Court DIRECTS the Parties to file a joint motion for disbursement in accordance with the directions herein within thirty (30) days from the date of entry of this order.
SO ORDERED , this 25th day of March, 2019.

GSRAN-Z is an affiliate of Investa. [Docs. 76-1 at ¶ 20, 78-1 at ¶ 20, 81-1 at ¶ 21].

Although this state tax execution included assessments for 2009 and 2010, the assessments for these tax years reflect adjustments which were made to the same liabilities recorded in 2012. [Doc. 79-1 at ¶ 10].

The Georgia Department of Revenue appeared as "Lynette T. Riley, in her official capacity as Commissioner of the State of Georgia Department of Revenue." [Doc. 5]. For ease of reference, throughout this order the Court refers to Ms. Riley as Georgia Department of Revenue.

The United States requested this figure based upon unpaid federal income taxes for tax years 2009 through 2012. [Doc. 11 at ¶ 24]. However, as discussed infra , the United States now seeks a judgment only as to tax years 2010, 2011, and 2012.

On December 20, 2016, the Court granted the Fulton County Sheriff's motion to deposit the $418,145.57 in excess funds into the Court's registry. [Doc. 15]. The excess funds were deposited in the Court's registry on January 6, 2017.

PHH filed its Motion for Summary Judgment on January 25, 2018. [Doc. 73]. Pursuant to Local Rule 56.1(A), the deadline for responses was on February 15, 2018.

Although in its answer, the United States' claim to the excess funds includes tax year 2009, the United States makes no arguments as to this tax year in their Motion for Summary Judgment. [See Doc. 67-1 at 2] ("Iphigenia McGrue currently owes the United States approximately $90,000 in unpaid income taxes for the 2010, 2011, and 2012 tax years .") (emphasis added). Additionally, even though the Georgia Department of Revenue mentioned in their Motion for Summary Judgment that the United States "has not claimed any proceeds from the surplus to satisfy McGrue's 2009 federal tax lien" [Doc. 74-1 at 9], the United States made no arguments to the contrary. Such failure to address or respond to the argument concerning tax year 2009 constitutes abandonment of that claim. See Grant v. Miami-Dade Cty., No. 13-22008-CIV, 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014), aff'd sub nom., 636 F. App'x 462 (11th Cir. 2015) ("Where a [party] fails to respond to an argument in a motion for summary judgment, he waives the argument. Summary judgment [on that issue] is appropriate.").

O.C.G.A. § 48-4-5 (a) provides as follows:
If there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale. Such notice shall be sent by first-class mail within 30 days after the tax sale. The notice shall contain a description of the land sold, the date sold, the name and address of the tax sale purchaser, the total sale price, and the amount of excess funds collected and held by the tax commissioner, tax collector, sheriff, or other officer. The notice shall state that the excess funds are available for distribution to the owner or owners as their interests appear in the order of priority in which their interests exist.

PHH makes only a cursory reference to this argument. [See Doc. 75 at 10, n. 15] (noting that the United States "may have priority as against McGrue and Wellington"). Indeed, the material facts that support this result are not in dispute. [See Docs. 75-1 at ¶¶ 9-11; 78-1 at ¶¶ 8-11; 81-1 at ¶¶-11; 82-1 at ¶¶ 8-11].

Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

As previously noted, McGrue and Wellington do not dispute the United States' claims to the excess funds. [Doc. 82 at 7].

As previously noted, McGrue and Wellington do not dispute Georgia Department of Revenue's claims to the excess funds. [Doc. 82 at 7].

The Court suspects this determination to be inconsequential since the excess funds in this case appear to be sufficient to cover either version of this priority determination.

The Court recognizes that the resulting list of priorities may create a circular priority problem. See New Britain, 347 U.S. at 88, 74 S.Ct. 367 ; In re Tuggle, 30 B.R. at 719 (noting that "[t]he problem presented by circular priorities was addressed in the case of [New Britain ]"); see also McKee-Berger-Mansueto, to Inc. v. Bd. of Educ., 691 F.2d 828, 834 (7th Cir. 1982) (addressing circular priorities). However, because the Parties did not argue or brief this issue, and the Court suspects that there are sufficient excess funds to satisfy the claims which create the circular priority problem, the Court declines to reach this issue.